## Fleming *versus* Culbert, Administrator of Fleming.

*The Statute of Limitations, application of to trust funds.*

The investment of moneys in bonds and mortgages by an attorney in fact, instead of remitting them to his principal, as directed, is not a fraudulent concealment that will prevent the running of the Statute of Limitations, from the time the money collected was demandable.

ERROR to the District Court for the city and county of *Philadelphia.*

This was an action of *assumpsit*, brought by Thomas F. Culbert, administrator of Samuel Fleming, deceased, to recover the distributive share coming to his intestate from the estate of a deceased brother, Robert Fleming, which had been collected by William Fleming, another brother, and the defendant in the court below.

Robert died in 1852. Samuel lived and died in Ireland, without ever visiting this country. Under a power of attorney William, the defendant below, received Samuel's share about November 3d 1853, with authority, as he alleges, to pay it over to his brother Samuel from time to time, as it might be demanded, and as it best suited himself.

On the trial, the plaintiff made proof of the power of attorney from Samuel to William, dated August 30th 1852; the account of Robert's administrators, filed November 8th 1853; a distribution account of the same administrators, filed December 16th 1853; and of the defendant's receipt and use of the money. This

[Fleming v. Culbert.]

was all the testimony. No proof of any demand for payment was given.

The defendant offered no evidence, but relied upon the Statute of Limitations as a bar, and asked the court to so charge, which was declined.

A verdict was then rendered for plaintiff for $2329.86.

*F. Carroll Brewster* and *Egbert K. Nichols*, for plaintiff in error, contended that Johnston *v.* Humphries, 14 S. & R. 394 (relied upon by the learned judge in the court below), had been virtually overruled by Mann *v.* Warner, 4 Whart. 455, and Lyon *v.* Maclay, 1 Watts 271. To exempt a trust from the operation of the statute, it must be a direct trust, and one belonging exclusively to the jurisdiction of a court of equity: Kinney's Ex'rs. *v.* McClure, 1 Rand. 284; Kane *v.* Bloodgood, 7 Johns. Ch. R. 90.

*R. H. McGrath* and *Samuel Hood*, for defendant in error, insisted that where a confidential relation existed between parties, like that in the case at bar, the statute could not be invoked: Harrisburg Bank *v.* Forster, 8 Watts 12; Riddle *v.* Murphy, 7 S. & R. 235; McDowell *v.* Potter, 8 Barr 189.

The opinion of the court was delivered, March 10th 1864, by

WOODWARD, C. J.—In the case of Glenn *v.* Cuttle, 2 Grant's Cases 273, it was held that the neglect of an attorney in fact to pay over the money of his principal within a reasonable time after its collection, was a breach of duty for which an action would lie without previous demand, and that the Statute of Limitations begins to run against the principal from the time his right of action accrues. But if there be fraudulent concealment on the part of the attorney, as, for example, if he give false or evasive answers to the inquiries of his client or principal, the statute begins to run only from discovery of the fraud.

How well these conclusions stand upon reason and authority may be seen by reference to that case. It was a carefully considered case, and I am not aware that it has been questioned or doubted in the ten years that have elapsed since it was decided. If it is to be followed, it leaves but a single question for our consideration in the case now before us, which question is, whether the attorney's investment of his principal's money in bonds and mortgages in his own name was a fraudulent concealment.

The Flemings were brothers. Samuel lived in Ireland, William here. Both were interested in the estate of Robert Fleming, another brother, who died here, and whose estate was here. Samuel gave William a letter of attorney, dated 30th August 1852, to receive and remit his (Samuel's) distributive share of

. [Fleming *v.* Culbert.]

Robert's estate. It is stated that a distribution account of Robert's administrators was filed December 16th 1853, the date, we presume, at which William received Samuel's share. No demand or inquiry on the part of Samuel was shown—no correspondence between the brothers was exhibited, but the judge states, that instead of remitting the money in the mode directed, he invested it in bonds and mortgages in his own name. The mode directed for the remittance was by bills of exchange on London, and was prescribed, it is presumed, when the letter of attorney was given. Samuel died in Ireland without ever coming to this country, and this action by his administrator was brought in 1862—some eight or nine years after receipt of the money. The Statute of Limitations was pleaded, but overruled, and the plaintiff below got a verdict for $2329.86.

The only question presented is, whether the investment of moneys in bonds and mortgages by an attorney in fact, instead of remitting them abroad, as instructed, was fraudulent concealment.

A majority of the court think it was not. We hold that it was no more a fraudulent concealment than if the attorney had kept the money in his own pocket or bank account. A breach of duty it undoubtedly was. He ought to have remitted the funds as directed. And because he was suable for this breach of duty, the statute, which always acts on the remedy and not the right, began to run when the action might have been brought. To arrest its progress the plaintiff should have shown a fraudulent concealment of the moneys, which we think was not done, by showing a safe investment of them. The moneys came from an administered estate, and were paid to the attorney in fact by an administrator whose accounts were all spread out upon a public record. The business could not be done in a corner. There was necessarily publicity in its transaction, and all the world was bound to take notice how Robert Fleming's estate had been disposed of. If an heir would not inquire for six years about an estate which he knew was in process of administration, why is he to be protected from the effect of a salutary statute more than any other negligent and indifferent creditor ? The genius and purpose of the statute are to stimulate men to diligence in business—to promptness in looking after their rights—to litigation, if it must be had, whilst evidence is living, and fresh, and at hand. If creditors will not take the hint which the statute intended to give them, but will slumber on their rights until it becomes a legal bar, let them show something to excuse their inaction—that they inquired of their agent, and were falsely or evasively answered—that they demanded their money and were promised—or that they were in some manner misled or deceived by him whom they trusted. To show merely

[Fleming *v.* Culbert.]

that the agent had made a safe and productive investment of moneys he ought to have remitted, is only to show the original and prime breach of duty which sets the statute agoing, not a supervening wrong which stops its running.

It would be impossible, in many cases, to administer the statute upon the principle that it began to run only from the time a principal or client had notice of the collection of his money, for this would be to limit it upon a very uncertain fact. In this case, for instance, would the statute start with a letter directed to Ireland, or only from its receipt there? And how would the time of its receipt there be fixed? Suppose it was never received; the agent, having performed his duty in sending it, ought not to be denied the protection of the statute, but if neither the transmission nor the receipt of notice would furnish a starting point of the statute, where would it be found? A jury would fix it one way in this case, and another way in the next, and thus a stable rule of statute law would fluctuate with the changes and chances of the jury-box. And let it never be forgotten that the limitation of the statute applies to the *right of action*, so that a judicial construction *limiting* it to *notice* of a right of action would be sheer legislation.

Most of this class of cases have attempted to be treated as trusts on the principle of Johnson *v.* Humphries, 14 S. & R. 394, but where the statute has been pleaded to a common law action, the reasoning in that case has not been followed: Lyon *v.* Markley, 1 Watts 295; Zacharias *v.* Zacharias, 11 Harris 454, and the cases cited in Glenn *v.* Cuttle, 2 Grant 274.

The learned judge was struck with the resemblance of this case to Johnson *v.* Humphries, but there is one very important distinction. When that case arose, a foreign creditor was within the proviso to our Limitation Act of 1713, as a person "beyond sea," and was thus saved from the operation of the statute; but that proviso was repealed by our Act of 16th April 1849, Purd. 656, as to all creditors beyond seas, except citizens of the United States. Now, therefore, foreign creditors who were never citizens of the United States, stand, in respect to the Statute of Limitations, just where domestic creditors have always stood. Judge Rogers seemed to doubt whether the case of Johnson *v.* Humphries was subject to the statute at all, but if it was, he held that it would begin to run only "from the time there was some person in this country who had a right to demand payment."

Such undoubtedly was the statute then, and just as certainly such is not the statute now.

If the paper-books had given us a fuller view of the trial of this case, we, perhaps, would not have thought it necessary to send it back to another trial; but as it is possible the plaintiff

[Fleming *v.* Culbert.]

below may be able to show something to arrest the running of the statute, we think it best to order a *venire de novo.*

The judgment is reversed, and a *venire facias de novo* is awarded.