## Barton *versus* Dickens.

*Statute of Limitations, applied to action of replevin.— What trusts are affected by the statute.*

1. The trusts not reached or affected by the Statute of Limitations are those technical and continuing trusts, which are not cognisable at law, but fall within the proper peculiar and exclusive jurisdiction of a court of equity.

2. Thus, where one by written agreement sold to another certain machinery to be paid for by instalments and to remain his until paid for, and the vendee took and retained possession for more than six years after the time fixed for the payment of the last instalment, when the vendor brought replevin:

*Held*, that as his right to demand a return of the property accrued when default was made in payment and his remedy thereupon was at law, by replevin: the possession of the vendee was not in trust and within the exclusive jurisdiction of a court of equity, therefore the Statute of Limitations would apply.

3. Hence, it was error to instruct the jury that no presumption arose against the plaintiff from lapse of time, and that the possession of the vendee was in trust and confidence, so that the Statute of Limitations was not applicable.

ERROR to the Common Pleas of *Chester county.*

This was an action of replevin, brought March 25th 1864, by Elias Dickens against James Barton, to recover the possession of certain woollen machinery described in the writ. The defendant claimed property, gave bond to the sheriff in the usual form, and retained possession.

On the 1st of September 1858, the property in dispute unquestionably belonged to the plaintiff.

On that day he and the defendant entered into the following agreement executed in due form:—

"Memorandum of agreement entered into this 1st day of September, between Elias Dickens of the one part and James Barton of the other part; that is, the said James Barton agrees to purchase from the said Elias Dickens the following machinery now standing in Joseph Fisher's mill: Say one woollen condenser, forty-eight inches, one woollen condenser, thirty-six inches, two woollen breakers thirty-six inches, one mule of two hundred and fifty spindles, and one stretcher or billey of one hundred and twenty spindles, one grinding frame and the shafting, belts, and other fixings thereunto belonging, as bought by Joseph Fisher on the 4th day of September 1854, from the said Dickens, for the sum of $1000, to be paid for as follows: Say $250 on the 1st of March 1856, $125 on the 1st day of June 1856, $125 on the 1st day of September 1856, $125 on the 1st day of December 1856, and $125 on 1st day of March 1857, and $125 on the 1st day of June 1857, and the balance, $125, on the 1st day of September 1857, together with interest at 6 per cent. from the said 1st day of September 1855 to the 1st day of September 1857. And

[Barton v. Dickens.]

it is further agreed, that the said Elias Dickens shall insure the machinery, and the said James Barton agrees to pay him for the same, and on no account shall the above machinery become the property of the said James Barton until the above amount of $1000 is paid, together with the interest and insurance as within specified. And it is further agreed that if the said James Barton wishes to sell out of the said machinery one mule and one condenser, that the amount sold for shall be paid over to the said Elias Dickens before delivery, and the said sum to be taken from the principal at the time of owing, and the balance to be divided into equal payments, as above."

Barton took possession of the machinery and used it in the manufacture of cotton goods for a period of over nine years, making all the repairs necessary from time to time, and supplying any new articles that became necessary—during which time Dickens never came to the mill, nor concerned himself in any way respecting the machinery, exercised no ownership whatever, nor made any claim to it of any kind until the writ of replevin was issued in this case.

The defendant requested the court to charge the jury:—

1. The articles of agreement between the plaintiff and defendant dated September 1st 1855, constitute a sale of the property therein described, from the plaintiff to the defendant subject to the payments therein expressed.

2. If the plaintiff ever had any right to claim the property passing under the agreement, he was bound to exercise it within a reasonable time after the payments mentioned therein became due, and his failure to exercise the same for more than seven years is a waiver thereof, and vests the absolute property in the defendant, leaving the plaintiff only his remedy for the purchase-money.

3. If the right to replevin the goods in controversy ever existed in the plaintiff it accrued to him more than six years before the beginning of this suit, and he, therefore, cannot recover them in this action.

4. There is no evidence in this case of any admissions on the part of the defendant sufficient to prevent the bar of the Statute of Limitations.

5. If the jury believe from the evidence in the case that the plaintiff waived the condition in the agreement of the sale, he cannot recover.

6. If the jury believe from the evidence in the cause that the plaintiff was indebted to the defendant at the date of the agreement in a sum larger than the purchase-money of the articles in suit, the plaintiff cannot recover.

7. If the jury believe from the evidence in this cause that the plaintiff at the date of the agreement was indebted in any less

[Barton *v.* Dickens.]

sum than the whole purchase-money of the articles in suit, if any damages are allowed it can be only for the balance due thereon.

8. If the jury believe the evidence submitted in this cause, their verdict must be for the defendant.

The court below, after stating the material facts, instructed the jury as follows :—

" The arrangement was in the nature of a sale, and mortgaging of the property for the purchase-money, which, while it would not have been good as against the purchaser's creditors, he having the possession, it was perfectly good against the defendant himself.

" It is not denied that this was the relation of the parties up to the time the purchase-money became due, and for some time thereafter, but it is denied by the defendant, that it continued to the time of instituting this suit. It is argued that the plaintiff waived his right to claim possession of the property for non-payment of the purchase-money, by his delay, and, further, that the Statute of Limitations now interposes a bar to his recovery. The court does not so understand the case, and the law applicable to it.

" [As we view it, no presumption has arisen against the plaintiff from lapse of time, nor is the Statute of Limitations applicable.]

" The relation of the parties after the purchase-money became due, remained as they were before. The plaintiff continued to be the owner of the property; the defendant having the right to make it his by paying the price stipulated. This was their express and most explicit agreement.

" [There is no room, therefore, for the presumption which is set up ; and to allow the defendant to apply the Statute of Limitations, and thus deprive the plaintiff of the property without paying for it, would be allowing him to disregard and violate his plain and explicit contract, and do manifest injustice.]

" There was nothing to quicken the plaintiff in his suit; the defendant must be regarded as continually acknowledging his right in the property, by reason of the arrangement under which he (the defendant) got the possession. The statute, we repeat, is not applicable to such a case.

" It follows, that unless the defendant has shown compliance with his contract, the plaintiff must recover. This the defendant undertook to do ; and for the purpose of showing payment, he produced evidence of indebtedness on the part of the plaintiff to him, on various accounts, prior to the date of this agreement. Here, however, he stopped. And this, standing alone, is, in the judgment of the court, of no value. [Without noticing the question whether this indebtedness, if it now existed, would avail the

[Barton v. Dickens.]

defendant to show payment under the agreement, it is a sufficient answer that the Statute of Limitations applies to it, and renders it valueless.] That it may have existed at the date of the agreement is unimportant; the law did not apply it to the payment of the money therein stipulated for, and there is no evidence that the parties did. The plaintiff, in answer, has produced evidence of indebtedness on the defendant's part to him, also accruing a long time ago—no item being within six years. I refer to this only for the purpose of saying, that it, together with the evidence of the defendant, to which I have just referred, must be thrown out in determining the rights of the parties in this action.

·" There is then no evidence that the defendant has paid for the machinery as he undertook to do, and according to the express terms of his agreement it continued to be the property of the plaintiff.

" As the defendant did not deliver it to the sheriff, but gave his bond and retained the property, it is now the right of the plaintiff to recover its value, with a proper sum added for the wrongful detention.

" What was its value at the time this suit was brought? Witnesses have testified to this point, and they seem to agree that it was about $1000. You will say what was its value at the time mentioned? For the detention the usual sum allowed in such cases is the interest on the value of the property, and there are no circumstances shown which would justify a larger amount in this case. And as the detention here cannot be regarded as wrongful until the defendant was called upon to restore the possession, interest should not be allowed prior to the commencement of this action, there being no evidence of a formal demand of the property before that time."

Under these instructions there was a verdict and judgment in favour of plaintiff, whereupon the defendant sued out this writ and assigned for error, the refusal of the court below to affirm the points submitted as above, and so much of the charge as is printed above in brackets.

*John Charles Leacock* and *Wayne McVeagh*, for plaintiff in error.

*Wm. Darlington* and *Thos. H. Speakman*, for defendant in error.

The opinion of the court was delivered, January 30th 1865, by AGNEW, J.—Barton, by the written agreement, agreed to purchase of Dickens certain machinery then standing in the mill of a third person for $1000, to be paid in instalments. It was expressly stipulated that the property should " on no account"

become Barton's until paid for. Barton took possession of the machinery and used it until replevied by Dickens. There was no express stipulation as to possession, but Barton's right of possession is simply inferred from the agreement to purchase—his permissive use, and the stipulation that the property should remain Dickens's until payment. No payment was made on the contract, and the replevin was not brought until more than six years after the time fixed for the payment of the last instalment.

The court below thought that the possession acquired in this way was one of trust or confidence, and that the Statute of Limitations did not apply. We think there was error in this. We have in this state adopted the conclusion of Chancellor Kent, in Kane *v.* Bloodgood, 7 Johns. Ch. Rep. 110, that the trusts intended by courts of equity not to be reached or affected by the Statute of Limitations, are those technical and continuing trusts which are not at all cognisable at law, but fall within the proper, peculiar, and *exclusive* jurisdiction of a court of equity. This matter is well discussed by Justice Kennedy, in Finney *v.* Cochran, 1 W. & S. 118. Hence there are many cases of direct and express trust where there is a clear and full remedy at law to which the Statute of Limitations is a good defence. In Lyon *v.* Marclay, 1 Watts 275, Ross, J., referring to the rule in Kane *v.* Bloodgood, says: "To exempt a trust from the bar of a statute, it must be first, a direct trust; secondly, it must be of the kind belonging exclusively to the jurisdiction of a court of equity; and thirdly, the question must arise between trustee and *cestui que trust.*" See also Johnston *v.* Humphreys, 14 S. & R. 394; App *v.* Dreisbach, 2 Rawle 302; Zacharias *v.* Zacharias, 11 Harris 452; Downey *v.* Garard, 12 Id. 54.

This case is certainly not one of those trusts which are enforceable in equity alone. When Barton failed to pay, Dickens had a full remedy at law. He might at his election sue for the money or disaffirm, and bring replevin for a return of the property. The relation was not one of special trust or confidence, but simply that of purchase on condition of payment before the title could vest. The failure of Barton to pay, known to himself of course, became immediate notice to Dickens also of the relation in which they stood to the subject of sale. Both knew that the possession was qualified, and after failure continued by sufferance only; and that Dickens's right of property drew to it the right of possession at the instant of default, and both had notice of the default from the contract itself, which fixed the time of performance. What necessity then was there, as the court below thought, for anything to quicken Dickens in his suit. He knew of the default, and he knew that possession was held for no special purpose or trust. How then could he be misled, or on what rely? Barton was not his trustee. On the

[Barton v. Dickens.]

contrary, every hour's delay on part of Barton was a reason reminding him of the necessity of taking back his property. How then can it be supposed there is any confidential relation which is presumed to continue till notice of its dissolution? We see nothing in the case but the ordinary one of the possession of property which must be paid for or returned, and where the right of action accrues immediately upon a default.

It has no resemblance to a loan, to which it has been likened, where possession is not to be presumed to be adverse till notice. But if there be an analogy it would be to a loan to be returned at a fixed time, beyond which retention is unlawful.

Analogies, if resorted to, are adverse to the opinion of the court below; as where the fiduciary relation ceases to exist at a known period, or where the relation is such as to put the plaintiff upon inquiry and demand. Thus the right of action of a ward against his former guardian is barred after six years from his arrival at age: Bull v. Towson, 4 W. & S. 557. So a right of action against a sheriff for a surplus of sale on a *fi. fa.* is barred after six years without notice from the officer to the defendant that there is a surplus: Alexander v. Leckey, 9 Barr 120. In that case Lowrie, J., said: "It is usually true that the sheriff is not liable to an action for money collected till after demand made, but the statute runs from the time when the plaintiff might have made the demand:" citing 15 Wend. 302; 13 Id. 267; 9 Pickering 488; 13 Id. 418; 2 Mees. & Wel. 461. The right of action accrues and the statute begins to run from the time an attorney in fact collects the money, and not from the time of notice to his principal: Campbell v. Boggs, Leg. J., July 14th 1855; also Livingston's Law Mag., September 1855, p. 565. This case is important, as it reviews and qualifies McDowell v. Potter, 8 Barr 189, and establishes that the statute begins to run when the right of action accrues, unless the plaintiff is put off his guard by fraudulent concealment. See opinion of Woodward, J., in that case, citing many cases of the application of this principle to various relations. Thus also upon a purchase by an attorney of bank stock for less than his client's claim, the statute runs from the purchase, and not from the time of notice to the client: Downey v. Garard, 12 Harris 52.

To sum up the case, Dickens's right to demand a return of the property accrued when default was made in payment. This right and the time it accrued were equally in the knowledge of both Dickens and Barton. The possession was retained for no special purpose, and no trust arose within the peculiar and exclusive jurisdiction of a court of equity. There was a clear and full common law remedy by replevin. The Statute of Limitations, therefore, began to run from the time the right of action accrued.

The judgment is reversed, and a *venire facias de novo* awarded.