On April 12, 1898, Mrs. Marks, in obedience to the decree of the court, paid into court, counsel for Hemphill having declined to take the money, the sum of $770.12, $629.73 of this amount being one fourth of the debt and interest of plaintiff's judgment, and the remaining $140.39 being the entire amount of the costs.

*Error assigned* was decree of the court, quoting it.

*H. M. Dougan*, for appellant, cited Dorris v. Erwin, 101 Pa. 244; Hartman v. Ogborn, 54 Pa. 120; Kennedy v. Baker, 159 Pa. 146; Murray v. Weigle, 118 Pa. 159; Shryock v. Buckman, 121 Pa. 248; Hemphill v. Pry, 183 Pa. 593; Myers v. South Bethlehem Borough, 149 Pa. 85; DeChastellux v. Fairchild, 15 Pa. 18.

*J. C. Ewing*, for appellee, cited Taylor's Executors v. Maris, 5 Rawle, 57; 1 Story's Equity Jurisprudence, sec. 475.

PER CURIAM, October 31, 1898:

The decree in this case is affirmed on the opinion of the learned court below

---

Louisa Ahrns, George Ahrns, Henry Ahrns and Lewis Ahrns v. The Chartiers Valley Gas Company, Appellant.

188    249<br>35 SC 328

*Oil and gas lease—Forfeiture—Rentals—Assumpsit.*

An oil and gas lease for a term of twenty years stipulated that the lessee should drill at least two wells on the premises; it also provided that a failure by the lessee to pay the rental specified at the times stated should render the lease null and void. The lessee drilled one well, but never drilled the second one. The gas from the first well was utilized, and paid, for more than two years, when the well was plugged, the casing pulled and the rig taken down. The lessee did not surrender or offer to surrender the written lease or place upon record any paper showing that the recorded lease had been surrendered. Ten years after the last payment of rental the lessor brought an action of assumpsit for rentals under the lease. *Held*, (1) that the lessee had no right to abandon the leasehold

even if the first well had proved a total failure, as it had expressly contracted to test the farm by drilling two wells; (2) that there was no evidence in the case that the lessor knew or ought to have known that the lessee ever intended to abandon and surrender its rights under the lease; (3) that, as the action was not in ejectment to enforce a forfeiture, but in assumpsit upon a sealed instrument, the lessor's right to recover the rentals was not defeated by his delay.

*Practice, common pleas—Rule of court—Execution of instrument.*

Where a rule of court provides that the plaintiff shall not be required to prove the execution of an instrument sued upon unless the defendant files an affidavit denying that the instrument was executed by him or by his authority, it is not necessary for the plaintiff, in an action upon an oil and gas lease where the lease is filed of record before the return day, to prove its execution in the absence of an affidavit denying the execution of the lease by the lessee.

In an action against a corporation upon an oil and gas lease where it appears that the defendant took possession under the lease, drilled a well, obtained gas and paid for it, and afterwards executed a written agreement referring to the leasehold created by the lease as its property, the defendant will be estoppèd from denying that the lease was executed by its authority.

Argued Oct. 19, 1898. Appeal, No. 112, Oct. T., 1898, by defendant, from judgment of C. P. Washington Co., May T., 1897, No. 128, on verdict for plaintiff. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit upon an oil lease.

The facts appear by the opinion of the trial court disposing of the reserved points.

At the trial the court directed a verdict for plaintiffs, reserving the following points presented by the defendant:

1. The act of March 27, 1713, known as the statute of limitations, is a bar to the recovery by the plaintiffs of more of their claim than for the six years immediately preceding the bringing of their action.

2. The failure of the plaintiffs to bring an action for the recovery of their supposed claim, or of any part of it, against the defendant prior to March 27, 1897, is indicative of their acquiescence in the apparent purpose of the company to regard the lease in evidence as not binding upon either of the parties thereto.

3. The first instalment of rent for delay in completing the

second well contracted for in the lease between the parties to this action, having become due and payable on November 7, 1887, and no action, having been brought by the plaintiffs to recover said instalment until March 27, 1897, such delay was unreasonable, and the plaintiffs cannot recover either the instalment just referred to or any other instalment of rent under said lease claimed to be recoverable in the present action.

4. The forfeiture clause in the lease having been inserted therein for the benefit of the lessors, it was their duty to promptly exercise their right to declare the lease forfeited for noncompliance by the defendant with its covenants, or to manifest their intention to require the defendant to comply with the covenants in the lease relative to the stipulated payments to be made for delay in the completion of the second well; and the failure of the plaintiffs to attempt to exercise their right of election until March 27, 1897, when this action was brought by them, was not an exercise of their right of 'election within a reasonable time, and they cannot recover.

4½. That the lease offered in evidence by the plaintiffs shows on its face that it is not the deed of the Chartiers Valley Gas Company, is not signed by that company as it was averred to have been signed both in the original statement and in the amended statement, and it is not a basis upon which the plaintiffs can ask for a recovery in this case under their statement.

5. Upon the evidence and the law applicable to it, the verdict of the jury must be for the defendant.

Verdict for plaintiffs for $10,133.64.

The opinion of McILVAINE, P. J., upon the questions of law reserved, was as follows:

From the lease offered in evidence at the trial the following extracts are relevant to the motion now before us.

"This lease made this seventh day of August, A. D. 1885, by and between Louisa Ahrns, George Ahrns, Henry Ahrns and Lewis Ahrns of the county of Washington and state of Pennsylvania of the first part and the Chartiers Valley Gas Company of the second part. . . .

"To have and to hold the said premises, for the said purpose only (the purpose being 'of drilling and operating for petroleum oil or gas') unto the party of the second part its execu-

tors, administrators and assigns, for, during and until the full term of twenty years next ensuing the day and year above written. . . .

" It is further agreed that party of second part shall drill on said premises at least two wells. . . . . Well No. 1 to be completed within one year of the date of this lease, and well No. 2 within two years of the date of this lease. . . .

" Well No. 2 shall be completed within two years of the date of this lease, and if sufficient quantity of gas is obtained to utilize, the consideration in full to parties of the first part for said well No. 2 shall be an annual rental sum of eight hundred dollars, to be paid quarterly in advance, first payment to be made two years from date of this lease when annual rental shall begin and be paid each year thereafter. . . .

" In case of delay in the completion of the two wells as herein specified, the annual rentals shall be paid in full in manner as herein specified, and parties of first part agrees to accept such annual rental as consideration for such delay. . . .

" Should party of second part fail to pay to party of first any of said payments within thirty days of the times herein specified at their Chartiers Valley Gas Company office, Pittsburg, Pa., such failure renders this lease null and void and to remain without effect between the parties hereto. . . .

" The said party of the second part is further to have the . . . . right to remove all machinery and fixtures placed on said premises by them. . . . In witness whereof we, the said parties of the first and second part have hereunto set our hands and seals the day and year above written.

" Witness :
    " John M. Miller.
    " Thomas J. Bray.

            " Louisa Ahrns        (Seal)
            " George Ahrns        (Seal)
            " Henry Ahrns         (Seal)
            " Lewis Ahrns         (Seal)
            " James Chambers,     (Seal)
                (President)
                        (Company Seal)."

The Chartiers Valley Gas Company, the defendant in this case, entered upon the premises described in the lease offered

in evidence and drilled well No. 1, and obtained gas, which was utilized and paid for by it, for more than two years, when the well was plugged, the casing pulled and the rig taken down. The company never drilled another well, never paid to the plaintiffs anything on account of and for delay in not drilling well No. 2, and never did anything further on the farm than drill No. 1 and operate it as before stated.

### CONCLUSIONS OF LAW.

Under these facts two questions of law arise: First, are the plaintiffs entitled to recover anything? Second, are they entitled to recover more than the rental for six years immediately preceding the day when this action was instituted? In answering the first question we are to consider the questions of law reserved in our answers to the defendant's points numbered 2, 3, 4, 4½ and 5. In these points the defendant's counsel, in substance, asked the court to instruct the jury to return a verdict for the defendant, first, because the lease had been abandoned, and second, because the lease offered in evidence was not the lease of the Chartiers Valley Gas Company and did not support the plaintiffs' statement to that effect.

The defendant's argument in support of the first reason is this: the lease granted to the defendant the right to explore for oil and gas, and that, after the test of the first well was made, it considered its search for oil and gas unsuccessful and abandoned the premises, and that the plaintiffs having delayed bringing their suit for rentals until March 27, 1897, cannot recover on account of the unreasonable delay in electing not to forfeit the lease but to bring suit as they did. This argument, in our opinion, does not sustain the proposition it seeks to establish. Although the lease may have only given the defendant company " the right to explore for oil and gas " in the first instance, as decided in Venture Oil Company v. Fretts, 152 Pa. 451, the fact that the lessee drilled upon the leased premises and obtained gas which for over two years was utilized and paid for, perfected its title to all the gas in and under said premises. The privilege to explore for gas was, in the first instance, but an inchoate right. Exploration and discovery of gas in paying quantities, however, perfected the title, not only to the gas mined, used and paid for, but to all the gas in and

under the farm that might be brought to the surface by drilling other wells. More than that, the lessee in the case at bar had not the right to abandon the lease even if the drilling of the first well had not resulted in the discovery of oil or gas, for the reason that it expressly convenanted to "drill on said premises at least two wells," or pay the rentals provided for. But granting that the lessee had the right to abandon the lease, the evidence in the case does not show that the company exercised it. The plugging of the first well, the pulling of the casing and the taking down of the rig was no such act on the part of the lessee as would have justified the plaintiffs in concluding that it intended to abandon and surrender its rights under the lease. It was simply evidence that well No. 1 no longer produced gas in paying quantities. And in addition to that, the lessee did not surrender or offer to surrender to the plaintiffs its written lease or to place upon record any paper showing that the recorded lease to them had been surrendered. We are therefore of the opinion, first, that the defendant company had no right to abandon this leasehold even if well No. 1 had proved a total failure, as it had expressly contracted to test the farm by drilling two wells; and second, that there is no evidence in the case to show that the plaintiffs knew or ought to have known that the defendant ever intended to abandon and surrender its rights under the lease.

Neither can we see how the authorities cited by the counsel for the defendant on the question of election have any bearing upon the issue here joined. It is true that the forfeiture clause in the lease was inserted for the benefit of the plaintiffs, and it was for them to elect whether they would forfeit the lease or not upon the failure of the defendant to perform its covenants. It may also be true that the right to declare a forfeiture must be promptly exercised. But the plaintiffs in this case are not seeking to enforce a forfeiture. If this was an action of ejectment by the plaintiffs against the defendant, then the argument of counsel might have some force. This suit is based upon the covenant of the defendant, and no election on the part of the plaintiffs was necessary in order to maintain it. It might be defeated by the defendant showing that the plaintiffs had elected to forfeit the lease, but the plaintiffs to recover the rentals, are not bound to show in their case that they did not forfeit it.

And surely their delay in bringing the suit will not estop them from maintaining it. There is no obligation upon a creditor to promptly sue his debtor. The penalty of indulgence by the creditor is not the forfeiture of a right of action against the debtor, unless that indulgence comes within the provisions of the statute of limitations. And in this case the suit being upon a sealed instrument the statute of limitations has no application: Davis v. Shoemaker, 1 Rawle, 135.

This brings us to the second reason why the defendant asked the court to give the jury binding instruction to find for the defendant, and that was as set out in the defendant's point numbered $4\frac{1}{2}$, "that the lease offered in evidence by the plaintiffs shows on its face that it is not the deed of the Chartiers Valley Gas Company, is not signed by the company as it was averred to have been signed, both in the original statement and in the amended statement, and it is not a basis upon which the plaintiffs can ask for a recovery in this case under their statement." Section 5 of Rule 3 of our court rules provides, "In actions upon deed, bond, or other instrument of writing, a copy of which shall be filed on or before the return day of the writ, it shall not be necessary for the plaintiff on the trial to prove the execution thereof, but the same shall be taken as admitted, unless the defendant, by affidavit filed with or before plea entered by him, shall deny that the same was executed by him or by his authority." It is admitted that a true copy of the lease was filed on or before the return day, and that the defendant did not file an affidavit denying that the lease was executed by it or by its authority. This being the case, in the language of the rule, the lease must be taken as admitted, and on its face, from first to last, it purports to be a lease wherein the Chartiers Valley Gas Company is the lessee. The covenant sued upon is expressly stated to be its covenant,—the covenant of the party of the second part, and the party of the second part is expressly stated to be the Chartiers Valley Gas Company. But even if the court rule cited did not estop the defendant from denying that the lease offered in evidence was the lease of the defendant, we think that the fact that it took possession of the plaintiffs' farm under the lease, drilled a well, obtained gas and paid for it, and afterwards executed a written agreement referring to the leasehold created by the lease as its property would estop

it from denying that the lease was executed by its authority and was binding upon it.

And now, April 19, 1898, judgment non obstante veredicto refused, and upon payment of the jury fee, judgment will be entered in favor of the plaintiffs upon the verdict of the jury.

*Error assigned* among others was in entering judgment for the plaintiffs on the verdict.

*H. M. Dougan* and *D. T. Watson*, with them *J. R. Sterrett*, for appellant.—When the failure to complete the second well had been established instalments of rent began to accrue; and the defendant insists that as to each of the instalments that accrued more than six years before the plaintiffs brought their action, the statute of limitations is a bar: Bauer v. Roth, 4 Rawle, 92; Stout v. Kindt, 24 Pa. 452; Zacharias v. Zacharias, 23 Pa. 452; Evans v. See, 23 Pa. 92; 3 Parsons on Contracts (7th ed.), 100; Hemp v. Garland, 4 Q. B. (45 A. & E. N. S.) 519.

There was an indisputable variance between what was pleaded and what was proved. A variance is a disagreement between the allegation and the proof in some matter which, in point of law, is essential to the charge or claim: 1 Greenleaf on Evidence, sec. 63; Heck v. Shener, 4 S. & R. 249; Brinley v. Mann, 2 Cushing, 337.

Of course, the signature of the defendant corporation itself, was a physical impossibility; but no reason appears why, if the lease was the contract of the defendant, it could not have been signed "The Chartiers Valley Gas Company by J. A. Chambers, President." Such an execution would have complied with the rule enunciated in Miller v. Ruble, 107 Pa. 395, Ulam v. Boyd, 87 Pa. 477, and Quigley v. DeHaas, 82 Pa. 267.

The court has repeatedly held that clauses, such as in the present lease, in oil and gas leases are for the benefit of the lessor; and that it is at his option to declare the forfeiture: Wills v. Gas Co., 130 Pa. 222; Jones v. Gas Co., 146 Pa. 204; Mathews v. Gas Co., 179 Pa. 165; Zimmerman v. Lebo, 151 Pa. 345; Grattan v. Grattan, 18 Ill. 167; Thompson v. Christie, 138 Pa. 249; Lynch v. Gas Co., 165 Pa. 518; Steiner v. Marks, 172 Pa. 404. A man who will not speak when he ought, will not be heard when he desires to speak: Broom's Legal Maxims (ed.

1864), p. 152; Logan v. Gardner, 136 Pa. 588; Chatman v. Chatman, 59 Pa. 319; Margut v. U. B. Mut. Aid Society, 148 Pa. 185.

An abandonment may be presumed as matter of law: Whitcomb v. Hoyt, 30 Pa. 403.

*M. L. A. McCracken,* with him *B. E. McCracken,* for appellees.—The cases cited by appellant are not in point. In Bauer v. Roth, 4 Rawle, 92, the debt accrued by reason of a subsequent enjoyment of the demised premises under the lease. In Evans v. See, 23 Pa. 92, the suit was brought within one year after the right of action accrued. In Zacharias v. Zacharias, 23 Pa. 452, the action was one of assumpsit for money had and received, and in Stout v. Kindt, 24 Pa. 449, the action was for damages for diverting a water course so as to flood plaintiff's meadow. This, however, is an action on a contract of lease under seal which contains an express covenant to drill a second well within a given time, and in case of delay to pay the rentals in full as in said lease specified.

In this case the liability of the defendant grows directly out of its covenants in the contract of lease, which is a sealed instrument; consequently the statute of limitations has no application: Davis v. Shoemaker, 1 Rawle, 135.

The contract of lease on which this suit is brought does not expire until August, 1905. If it was not a sealed instrument the statute of limitations would not be a bar to any part of the annual rentals until six years after the contract was at an end: Vanhorn v. Scott, 28 Pa. 316.

The contract of lease on which this suit is brought provides for a royalty and also for the payment of annual rentals; each of which is made the subject of special covenant. They stand on the same footing and the statute of limitations does not apply to a suit for their recovery: Williams v. Short, 155 Pa. 480.

The presence of the corporate seal on the lease is prima facie evidence that the deed was made by authority of the corporation. If nothing more than the seal appear the law will infer an authority from that: Mitchell on Real Estate, page 456; Turnpike Co. v. Rutter, 4 S. & R. 16; Bushel v. Ins. Co., 15 S. & R. 173; Rathbone v. Navigation Co., 2 W. & S. 74; Hamilton v. Ins. Co., 5 Pa. 339; St. John's Church v. Steinmetz,

18 Pa. 273; Farmers', etc., Turnpike Co. v. McCullough, 25 Pa. 303; R. R. v. Transportation Co., 83 Pa. 160; Penna. Nat. Gas. Co. v. Cook, 123 Pa. 170.

It is argued that the plaintiffs have acquiesced in the abandonment of the defendants. It is a sufficient answer to such an argument to say there can be no acquiescence in an abandonment which is purely mythical.

PER CURIAM, October 31, 1898:

The judgment in this case is affirmed on the opinion of the learned court below.

---

Assigned Estate of Joseph Wise, Jr. Appeal of Mary S. Wise.

*Will—Charge on land—Legacy.*

To make a legacy a charge upon land devised, it is necessary it should be declared so by express words, or that it may be inferred from the whole will that such was the intention of the testator.

A naked direction to the devisee to pay a legacy creates only a personal liability if he accepts the devise. But a direction to the devisee to pay a legacy out of the lands devised, or as a condition on which the lands are devised, creates, not only a personal liability if the devise is accepted, but also a charge upon the land devised.

Testator directed as follows: "I give and bequeath unto my younger son Joseph Wise Jr. his heirs and assigns, all that messuage or tenement of my homestead farm with the appurtenances belonging theretoo. I give to my five daughters Elizabeth Stewart Mary and Mihanna Rebecca Tombough Maria Shields Barbary Hill one thousand Dollars Each to be paid in manner, as I hold Receipts against them the ballance to bee paid in one year after my Decease. My said younger Son Joseph Wise Jr. is to pay in Consideration for the farm bequeath to him by me the ballance to make the five Daughters a bove menched equel acording to there out Seting of my Astate. I further bequeath to Said Elezabeh Mary ann Rebeca Maria and Barbary Hill five hundred Dollars Each over and above ther out Seting to be paid in two years after my Decease to them, which Joseph is to pay them being there full share of my Estate, being the ballance he is to pay for the farm which I have bequeath to Said Joseph wise Jr. and my Executrix to deed the Said farm to him for ever my will is that my personal Estate of what kind and nature Soever to apprase and Sell the Same to pay my debts and funeral Expences." *Held,* that the daughters' legacies were charged upon the land.