Priester, Appellant, *v.* Milleman.

508

Argued April 22, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Myron E. Rowley,* with him *Ralph E. Smith* and *Rowley & Smith,* for appellant.

*Earl J. Schermerhorn,* with him *Ralph K. Smith* and *Smith & Schermerhorn,* for appellee.

OPINION BY RENO, J., November 12, 1947:

J. D. Jones acquired a piano from defendant under a bailment-lease dated February 5, 1927, and gave it to his daughter, plaintiff below and appellant here. She had no knowledge of the lease until 1944. The lease was under seal, and provided for a rental of $500, of which $140 was paid upon execution of the lease, and the balance was payable in 24 monthly instalments of $15 each. It contained the usual covenants against assignment, underletting, removal from bailee's premises, and for redelivery to bailor at the expiration of the term. For a violation of the covenants bailor was authorized "to take forcible possession . . . wheresoever found, the lessee hereby releasing the lessor from any damages and all action of law occasioned by taking forcible possession." It also contained a confession of judgment in the usual form "for the whole amount unpaid on this lease." The bailee was given the right to purchase the piano during the term, but the space in which the purchase price was to be stated was left blank. It is conceded that upon payment of the entire rental of $500 Jones would have secured absolute title.

Jones died in 1939. Before and after his death the piano was kept in his home and used by plaintiff until 1942, when she married Marcus J. Priester. She moved to a furnished apartment and left the piano in her

mother's home who, with plaintiff's consent, loaned it to Mrs. Stanley Evans in 1943. Jones had paid on account of the rental a total of $470, the last payment having been made on December 21, 1928. After futile efforts to collect the balance of $30, defendant secured peaceable possession of the piano from the Evans home in 1944, without resort to a writ of replevin. Additional facts will be stated in connection with appellant's several contentions.

Claiming ownership of the piano and alleging that defendant had converted it, appellant instituted trespass to recover damages. At the trial the court directed the jury to return a verdict for defendant, which it declined to disturb upon appellant's motions for judgment n. o. v. and for a new trial.

I. Appellant's first contention is that the time in which a writ of replevin could issue having expired by virtue of the Statute of Limitations, defendant could not thereafter regain possession of the piano by the process of self-help. Indeed, the proposition goes further, for appellant urges that the lapse of the time fixed by the statute vested title to the piano in plaintiff.

Where chattels are placed into the possession of another and are to be returned at a fixed time, as in the case of a conditional sale and undoubtedly in a bailment, the right of action accrues immediately upon a default. *Barton v. Dickens,* 48 Pa. 518. The writ of replevin is barred six years after the cause of action accrues. Act of March 27, 1713, 1 Sm. L. 76, §1, 12 PS §31. Defendant's right to a writ of replevin expired six years after the expiration of the two-year term, that is, on February 5, 1935. But it does not follow that his right to retake possession under a provision in a sealed instrument also expired. The general principle is that statutes of limitations relating to personal actions merely bar the remedy and do not discharge the right. *Levy v. Cadet,* 17 S. & R. 126; *Fleming v. Culbert,* 46 Pa. 498; *Phila. Electric Co.'s Appeal,* 352 Pa. 457, 43 A. 2d 116. As a consequence, Williston says, and presents sev-

eral illustrations, "the creditor remains entitled after the statute has run to use any other means of collecting his debt than a direct right of action." 6 Williston on Contracts, §2002.

Several selected Pennsylvania cases will illustrate the operation of the principle in varied factual situations. In *Smith v. Smith,* 35 Pa. Superior Ct. 323, where the owner of a note under seal had been wrongfully deprived of its possession by the payee and replevin for its recovery had been barred by the Statute of Limitations, recovery in assumpsit for the amount of the note was allowed. In *Presbyterian Church v. Conlin,* 11 Pa. Superior Ct. 413, the congregation was permitted to recover upon a sealed contract of indemnity against the surety although it could not have recovered against the contractor whose agreement was unsealed and against which the statute had run. In *Potter Title & Trust Co. v. Berkshire Life Ins. Co.,* 156 Pa. Superior Ct. 1, 4, 39 A. 2d 268, we held, quoting from *Hartranft's Est.,* 153 Pa. 530, 26 A. 104: "The holder of a note with whom collaterals have been deposited has, while the statute is running, two remedies. One against the maker by suit, the other against the collaterals. If he loses the first by the lapse of time, he still has the second." For further illustrations, see *Ahrns v. Chartiers Valley Gas Co.,* 188 Pa. 249, 41 A. 739, (ejectment barred; recovery in assumpsit for rent allowed) ; *Sproul v. Standard Glass Co.,* 201 Pa. 103, 50 A. 1003, (debt barred; lien of corporation upon debtor's stock upheld) ; *Batten v. Jurist,* 306 Pa. 64, 158 A. 557, (notes barred; recovery of surplus proceeds of mortgage foreclosure sale allowed) ; *Murdock v. Murdock,* 300 Pa. 280, 150 A. 599, (note barred; resort to collateral allowed) ; *Brackenbridge v. Cummings,* 18 Pa. Superior Ct. 64, (notes barred; recovery on mortgage securing them allowed) ; *U. S. v. Mercantile Trust Co.,* 213 Pa. 411, 62 A. 1062, (action on book account barred; recovery against surety's bond allowed).

Appellant principally relies upon *Chapin v. Freeland,* 142 Mass. 383, 384, 386, 8 N. E. 128, where Mr. Justice HOLMES, while Chief Justice of Massachusetts, stated: "If he cannot replevy, he cannot take with his own hand." Later when he had become a member of the United States Supreme Court, he stated, citing the *Chapin* case as authority, that the cases "generally hold that the title to chattels, even, passes where the statute has run": *Davis v. Mills,* 194 U. S. 451, 457, 24 S. Ct. 692. From this source is derived appellant's further contention that the lapse of time vested title in the piano in her. But the statement of the eminent jurist must be related to the factual situation out of which it arose. A bailment was not there involved, and the reporter's statement of the facts demonstrates that the successful party had held the chattels adversely to the true owner for a period exceeding the limitary bar of the Massachusetts statute. The case must be understood as holding only that if during the running of the period prescribed by a statute of limitations relating to the recovery of chattels, they are held *adversely* to the true owner, the latter cannot recover them by the process of self-help after the expiration of the period, and that upon the expiration of the period title vests in the adverse holder. That this is the sense in which the *Chapin* case is understood in Massachusetts is evidenced by the recent case of *Mulligan v. Hilton,* 305 Mass. 5, 24 N. E. 2d 676, and the text writers have attributed that meaning to the *Chapin* case. See 34 Am. Jur., Limitation of Actions, §76.

II. In truth, appellant's real position rests upon a claim to title by adverse possession. She contends that possession of the piano by her father from February 5, 1929 to February 5, 1935, vested title in him, which accrued to her by his antecedent gift of it to her.

Our courts have rarely dealt with the doctrine of adverse possession of personal property, although there is recognition of it as applied to bailments in a dictum by Mr. Justice SHARSWOOD in *Morris's Appeal,* 68 Pa.

16, 23. Elsewhere the doctrine has been thoroughly developed. It involves an extension to personal property of the same result which flows from adverse possession in the case of real estate. Of course, the literal effect of our statute relating to real estate is to bar not only the remedy but also the right of entry. Act of March 26, 1785, 2 Sm. L. 299, §2, 12 PS §72. In this respect it differs from the statute relating to personal actions, for there, as we have seen, only the remedy is barred. The theory is that the law will not recognize the existence of a title which it will not protect, and that consequently the effect of barring the original owner's action by operation of the statute is to extinguish his title, exactly as in corresponding cases of land. 1 Walsh, Commentaries on Law of Real Property, §27.

Hence the rule, sustained by the weight of authority, subject to limitations and exceptions which need not be mentioned here, is that where one has had the peaceable, undisturbed, open possession of personal property, with an assertion of his ownership, for the period which bars an action for its recovery by the true owner, the former acquires a good title, superior to that of the latter, whose neglect to assert his legal rights has lost him his title. 1 Am. Jur., Adverse Possession, §96. Custody of the chattels and the mere lapse of time will not confer title by adverse possession. The possession must be actual, open, notorious, exclusive, hostile, uninterrupted, and always under a claim of right or title. 2 C. J. S., Adverse Possession, §237.

Moreover, the relation of bailor and bailee is analogous to that of landlord and tenant, and the possession of the bailee is in subordination to the title of the bailor. 2 C. J. S., Adverse Possession, §242. Nor will the possession of a chattel, with the consent or permission of the owner, however long continued, give title by adverse possession. Id. §241. "Possession by a bailee or other person with the express or implied consent of the owner is not adverse because no cause of action arises against

which the statute may run. Here as in corresponding cases of permissive possession of land the adverse character of the holding must be established, usually in these cases by acts establishing a conversion of which the owner has express notice, or notice clearly implied from the notoriety of the acts of conversion before the possession of such person becomes adverse." Walsh, op. cit., supra, §27. "Adverse possession begins to run in favor of a bailee, as against his bailor, only from the time the bailee disclaims the original title and assumes absolute ownership of the property and the bailor has actual or constructive notice thereof": 2 C. J. S., Adverse Possession, §242. See also 6 Am. Jur., Bailments, §343.

These principles have been recognized and applied in Pennsylvania. In *McMahon v. Sloan,* 12 Pa. 229, 234, plaintiff loaned his horse to his son who sold it to defendant. The Supreme Court held: "Mere lapse of time, without more, will not change the relative rights of the parties, though doubtless it may enter into the estimate when weighing their intention . . . mere possession in a third person, however exclusive, is in itself insufficient to work a change of property." In a replevin issue between the bailor of rolling stock and the purchasers at a sheriff's sale of the railroad, it was held that bailee, like a tenant of real estate, could not deny the bailor's title. *Collins v. Bellefonte Cent. R. R. Co.,* 171 Pa. 243, 259, 33 A. 331. In *Leitch v. Sanford Motor Truck Co.,* 279 Pa. 160, 123 A. 658, it was held that since possession by the bailee is an incident of a good bailment, his possession is not inconsistent with the bailor's title, and that acts of dominion or declarations of ownership by the bailee, unauthorized by the bailor or unknown to him, will not stop the bailor from asserting ownership. See also *Federal Sales Co. v. Kiefer,* 273 Pa. 42, 116 A. 545.

The evidence falls far short of establishing a title in appellant by adverse possession. The most that it reveals is that defendant permitted the piano to remain in the possession of Jones and appellant for a long period

after the bailment-lease had expired. But this was a permissive use, and does not create title. There never was a repudiation of the lease either by Jones or his daughter, or a conversion of the piano, or a claim of title to it, or any act of dominion or declaration of ownership brought to defendant's notice or which was of such notoriety that defendant could be charged with constructive knowledge of it. There was, to be sure, an exercise of dominion when the piano was loaned to the Evans', but defendant had no knowledge of this action until a short time before he repossessed it. No element of adverse possession by a bailee was made out, and the court below properly refused to submit that question to the jury.

We exclude from the scope of the decision of this phase of the case the fact that the promise to return the piano at the expiration of the lease was under seal, and we do not pass upon the question whether that promise is subject to the Statute of Limitations or to the presumption of payment or performance. Having demonstrated that plaintiff's assertion of title by adverse possession is not valid when judged by the statute it becomes unnecessary to pronounce the effect of the circumstance that the promise was evidenced by a specialty.

III. The principal reason assigned for the directed verdict was that plaintiff had "no property right in the piano." This was error. As the donee of her father she succeeded to his rights as bailee, and for an invasion of her right to possession trespass was available to her. 6 Am. Jur. Bailments, §350.

IV. Appellant's last contention occupies firmer ground. Here the claim is that the court below should have submitted to the jury the question whether by the acts and intentions of the parties the bailment had been transformed into a sale. There is merit in this contention, and we shall grant a new trial.

A bailment such as the one here involved contemplates a sale. Perhaps it is not too much to say that the real purpose of the transaction is to effect a sale. At

least the transaction is often called an "instalment *sale*," even by the trade. The parties may at any time either before or after the expiration of the bailment modify its terms, and transform it into a sale. *Smith v. J. I. Case Threshing Machine Co.*, 50 Pa. Superior Ct. 92. The parties to a written contract may always show that it was subsequently abandoned in whole or in part, modified, changed or a new one substituted, and this may be established by an express parol agreement or actions necessarily involving the alterations. *Achenbach v. Stoddard*, 253 Pa. 338, 98 A. 604. The agreement to modify need not be expressed in words; it may be inferred from acts and declarations of the parties inconsistent with the original contract. *Weldon and Kelly Co. v. Pavia Co.*, 354 Pa. 75, 46 A. 2d 466. "That the parties have abandoned the contract by acts instead of words or writing is of no consequence": *Jacobs v. Wilkes-Barre Twp. School Dist.*, 355 Pa. 449, 454, 50 A. 2d 354. The fact that the original contract is under seal does not prevent operation of the rules relating to modification. Restatement, Contracts, §407; *Myers v. Ohio-Penn Gas and Oil Co.*, 294 Pa. 212, 144 A. 93.

Moreover, a long line of cases, beginning as early as *Campbell Printing Press Co. v. Hickok*, 140 Pa. 290, 21 A. 362, and continuing unbroken down to *Charlson's Furniture Co. v. Heigley*, 161 Pa. Superior Ct. 24, 53 A. 2d 878, hold that the bailor's actions may transform a bailment into a sale. The cases hold that a bailor may elect to repossess the chattels or collect the rental, but he cannot do both. The election is usually manifested by retaking possession with or without a writ of replevin or by entering suit or issuing execution upon the confession of judgment contained in the lease. But we do not understand the cases to hold that an election cannot be made in other ways. The finality of election may be otherwise indicated, and when it has been expressed in words or is evidenced by actions, and the conversations or the actions are susceptible of more than one interpre-

tation, it is for the jury to ascertain their meaning and significance. *Maynes v. Atwater*, 88 Pa. 496; *Henderson v. Sonneborn*, 30 Pa. Superior Ct. 182; *Smith v. J. I. Case Threshing Machine Co.*, supra, p. 99.

The doctrine of waiver is also involved. A waiver is the act of intentionally relinquishing or abandoning some known right, claim or privilege. *Bell's Est.*, 139 Pa. Superior Ct., 11, 10 A. 2d 835. Whether there has been a waiver is usually a question of fact. *Batchelder v. Standard Plunger Elev. Co.*, 227 Pa. 201, 75 A. 1090. We are not called upon to discuss the requisites of a valid waiver, but reference should be made to one element. Judge SOHN did not preside at the trial but he wrote the thoughtful opinion now under review, and he clearly perceived that the long delay in exercising the right of recapture was a relevant factor. He stated: "Leaving the account stand delinquent and leaving the piano in lessees' possession is a strong circumstance tending to show waiver of his right to repossess or his intention to insist upon payment of the balance due. This situation alone, however, is not sufficient to constitute a waiver of his right under a sealed instrument." The learned judge's reason for refusing recognition to "the strong circumstance" is not adequate. The presence of the seal does raise the question whether defendant could have lost the right of recapture by operation of the Statute of Limitations, and we have excluded that question from this decision. But the seal did not, as we have shown, prohibit rescission or modification of the contract, and it does not forbid the application of a waiver. Cf. *Benner v. Tacony Athletic Assn.*, 328 Pa. 577, 196 A. 390. Hence "the strong circumstance" should have been submitted to the jury along with the other evidence bearing upon the point.

However, mere delay in asserting the right of recapture is not an abandonment of it. *Cole v. Philadelphia Co.*, 345 Pa. 315, 26 A. 2d 920. But a delay is a relevant circumstance. Paraphrasing *McMahon v. Sloan*, supra, mere efflux of time without more will not change

rights, but is relevant in the ascertainment of the intention of the parties. When delay is accompanied by other acts inconsistent with one's rights, acts from which an intention to abandon them can be legitimately inferred, a jury is warranted in finding a waiver. There are cases like *Frech v. Lewis,* 218 Pa. 141, 67 A. 45, where a seller's delay of only two and a half months in asserting his lien for the unpaid purchase price was pronounced a waiver as a matter of law, but this case is not in that category.

Here there was a delay of 15 years after the expiration of the lease. In addition the jury could have found, depending upon its ascertainment of credibility, that from 1939, the date of the bailee's death, until the spring of 1944, defendant made no demand upon any one for either the unpaid balance or the piano. It could also have found that his demands were equivocal in character; at times he demanded payment of the balance due, indicating a sale; and other times required return of the piano, indicating a bailment. There were references in the documentary exhibits and the verbal testimony, sometimes in the questions and other times in the answers, to a "sale." We agree with the court below that the word "sale" is frequently used loosely to describe a bailment, and that great significance cannot be attached to that circumstance. Yet the sense in which the words were used, and their meaning is for the jury under careful instructions by the court. Since the case will be retried further discussion of the evidence would not be proper, but we think that the questions of modification, election, and waiver may, depending upon the sufficiency of the evidence, become jury questions. It would seem that the question, succinctly stated, will be: Did the long permissive use indicate a mere indulgence; or, because accompanied by other acts and declarations, did it amount to a modification of the contract, an election to treat the transaction as a sale, or a waiver of bailor's right to repossession?

Judgment reversed and a new trial awarded.