## Scottish Rite, Knights Templar and Master Masons' Aid Association v. Union Trust Company, Appellant.

*Practice—Trial—Evidence—Construction of words of witness—Province of jury.*

The sense of words in connection with what the parties intended to express by them is exclusively for the jury to determine. The judge may not put a legal interpretation on oral words, and make it a matter of positive direction. It is the province of the court to expound the meaning of an instrument, but not of words uttered of which there can be no tenor. It is the province of the jury who hear and observe the witness to determine the meaning of what he says.

A garnishee promptly notified the defendant of the service of the writ of attachment. Subsequently judgment was entered against the garnishee and the money collected. In an action by the defendant against the garnishee, which was a trust company, the attorney for the former testified that he had talked with the trust officer of the garnishee as to the attachment, and had told him that he would give him data for answers to interrogatories. He did not testify affirmatively that the trust officer, who was dead at the time of the trial, had promised to notify him when interrogatories were filed. On cross-examination he said: "I relied upon his promise that he would give me information when anything occurred, and I would give him that information at the proper time." The court construed the testimony of the attorney as sufficient to establish negligence on the part of the trust company, and gave binding instructions against it. *Held* to be error. MITCHELL and FELL, JJ., dissent.

*Attachment execution—Duty of garnishee to defend.*

If a garnishee wishes to relieve himself from liability for the funds attached in his hands, he must act in good faith to the debtor, and by using the information in his possession, "contest every inch of ground" to prevent a recovery of judgment by the attaching creditor.

Argued Jan. 16, 1900. Appeal, No. 289, Jan. T., 1899, by defendant, from judgment of C. P. Phila. Co., No. 1, March T., 1897, No. 165, on verdict for plaintiff. Before GREEN, C. J., MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Assumpsit to recover sums alleged to be due the plaintiff as trustee. Before BRÈGY, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $2,167.51, upon which judgment was entered for $1,568.66, a remittitur being filed for all above that amount.

*Error assigned* was in giving binding instructions for plaintiff.

*Edward L. Perkins*, with him *H. Merian Allen*, for appellant. —No legal notice was given during the pendency of the first two attachments, sufficient in its scope or authoritativeness to bind the Union Trust Company, defendant: Miner & Co. v. Kosek, 2 Dist. Rep. 638; Giddings v. Coleman, 12 N. H. 153; Wood v. Partridge, 11 Mass. 488; Maul v. Rider, 59 Pa. 167; Miller v. Cresson, 5 W. & S. 285; Bank v. Drury, 35 Vt. 469; Carnegie Nat. Gas Co. v. Phila. Co., 158 Pa. 317.

There was no evidence to show that the Union Trust Company did not act in entire good faith as garnishee, interpose every proper defense of which legal notice had been given, or knowledge had been imparted to it, in the course of the prosecution of the several attachment proceedings, and contest every inch of the ground until judgment was rendered against it: Anderson v. Young, 21 Pa. 443; Troubat & Haly's Practice, sec. 2289; Rood on Garnishment, sec. 202; Schempp v. Fry, 165 Pa. 510; McCallum v. Lockhart, 179 Pa. 427; Stoner v. Com., 16 Pa. 387; Calhoun v. Logan, 22 Pa. 47; Cole v. Bowden, 5 W N. C. 296; Bank v. Munford, 3 Grant, 232.

The impression on the part of Mr. Dechert is entirely too vague and uncertain to amount to evidence that Mr. Price made any promise that would be obligatory upon the Union Trust Company, in the absence of any statements showing the character, scope, or even the existence of any such promise: Cooley v. Traction Co., 189 Pa. 563.

*George S. Graham*, with him *Melick, Potter & Dechert*, for appellee.—A garnishee in an attachment must, in good faith to the owner, contest every inch of the ground or he will not be discharged from his debt: Schempp v. Fry, 165 Pa. 510; Baldy v. Brady, 15 Pa. 103.

A direct statement by one having a right, or by his representative of the existence of such right is sufficient to charge a person with notice. If a person about to acquire a right receives information from a third party tending to show the existence of a prior adverse right, which information considering its character and source, is sufficient if acted upon with reasonable diligence, to lead to a discovery of such right, then the reasonable inference is the interested party acquired such knowledge, and he will be chargeable with notice thereof: Hill v. Epley, 31 Pa. 331.

OPINION BY MR. JUSTICE MESTREZAT, March 5, 1900:

The judgment from which this appeal is taken embraces only the money applied by the defendant to the first two attachments.

The defense set up to the plaintiff's claim is, that the defendant paid the money sued for in this action on two judgments

recovered in the court of common pleas, No. 1, of Philadelphia county, by Avery D. Harrington, executor of Charles S. Adams, deceased, against the defendant as garnishee of the plaintiff. In reply to this defense the plaintiff alleges that, in December, 1890, after the first attachment had been issued, the defendant was notified that the money in its custody belonged to the Scottish Rite, Knights Templar and Master Masons' Aid Association as trustee and not in its own right, and was requested to inform the plaintiff's counsel when interrogatories were filed, so that a proper defense might be made to the attachment. It is claimed that the trust officer of the defendant consented to comply with this request but neglected to do so, and thereby prevented the plaintiff here from interposing this defense to the attachments. The answer of the defendant as garnishee to the two attachments admitted funds of the plaintiff to be in its hands, and on these answers judgments were taken against it and the money was paid to the attaching creditor.

To establish the notice alleged to have been given by the counsel for the plaintiff to the trust officer of the defendant Henry T. Dechert, Esq., was called as a witness. He testified that in consequence of information received from his client, through its counsel at Dayton, Ohio, he called upon Mr. Henry Price, the trust officer of the defendant, and had an interview with him in which he notified him of the change in the form of the plaintiff's business, that the plaintiff was a trustee of the money in its hands, and requested him to advise the witness of the progress in the attachment case so that proper notice could be given the Union Trust Company to defend. He further testified that he relied upon the promise of Mr. Price to give him the desired information, but that no notice of filing the interrogatories in the attachment proceedings was given him, and that he had no knowledge of an answer being filed or that a judgment had been entered against the garnishee.

The court below gave binding instructions to the jury to find for the plaintiff for the money paid on the first two attachments. These instructions were based on Mr. Dechert's testimony that the defendant had been notified of the plaintiff's defense to the attachments, and had promised Mr. Dechert, its counsel, that interrogatories should be submitted to him so that proper answers thereto might be filed setting up the defense.

The vital question in the case and the one upon which the plaintiff could recover, if at all, was the notice alleged to have been given by Mr. Dechert to Mr. Price in their conversation in December, 1890. Mr. Price is dead, and the proof of what occurred in the interview between him and Mr. Dechert depends upon the testimony of the latter. The court below put an interpretation on this, and held it to be sufficient to establish the fact that notice had been given to the trust officer, as claimed by the plaintiff, and that the latter had promised but failed in notifying Mr. Dechert that interrogatories had been filed.

By reference to Mr. Dechert's testimony it appears that the conversation between him and Mr. Price occurred at the defendant's office when the witness had gone there to attend to another matter. The testimony elicited from the witness in his examination in chief seems to be positive yet general, in its character. Mr. Dechert says he gave Mr. Price notice of the true condition of the business, but says he cannot give the language used in the conversation, which of course could not be expected after the lapse of so many years. At their interview, he gave no exact data that would enable the defendant to determine what amounts, coming into its hands, should be applied to each of the three funds respectively. He spoke generally of the change in the business. Mr. Dechert does not tell us what Mr. Price said on this occasion, nor what reply, if any, he made to Mr. Dechert's statements. The only part of the testimony showing that Mr. Price said anything is the answer of Mr. Dechert to a question of defendant's counsel, that " I relied upon his promise that he would give me information when anything occurred, and I would give him that information at the proper time." It may be inferred from this reply that Mr. Price promised to give the desired information, but it is only an inference. With this exception, the whole conversation seems to have been conducted by Mr. Dechert. The interview occurred in December, 1890. The attachment was issued November 7, 1890, and by his letter of the following day, Mr. Price very promptly wrote the association that his company had been served, the effect of the service, and requested it to take such action as it might deem proper. It is possibly a month after this communication, that Mr. Dechert calls upon Mr. Price and talks with him about this and another matter. No action was

taken in preparing a defense to the attachment by the association or its counsel, notwithstanding the explicit notice given by Mr. Price in his letter of November 8. The only reason assigned for this inaction is the inferential promise of Mr. Price. But if he was derelict in failing to advise Mr. Dechert of the filing of the interrogatories, it was directly the opposite of his conduct when the attachment was served. Whether Mr. Price understood from the conversation, that he was expected, without further notice, to furnish the necessary information to enable Mr. Dechert to answer the interrogatories, we do not know. As Mr. Price acted so very promptly in notifying the association of the service of the attachment, the inference might be drawn that he did not understand such to be the purport of the language used on that occasion.

We think it was error for the court below to withdraw from the jury the consideration of Mr. Dechert's testimony and to determine the question of fact by directing a verdict for the plaintiff. It was exclusively the province of the jury to determine what conversation took place between Mr. Price and Mr. Dechert and the meaning of the language used by them at their interview in December, 1890. What Mr. Dechert said, and what Mr. Price understood him to say was a question solely for the jury. As we said in a similar case, the court below evidently assumed that as no witness contradicted Mr. Dechert there was nothing for the jury to pass upon. This necessarily led the court into the error of giving peremptory instructions as to the effect of Mr. Dechert's testimony. The question of notice had to be established by oral testimony, and it was, therefore, the duty of the court to submit it to the jury. "It is settled law that when a case depends upon oral testimony such testimony must be submitted to the jury:" Grambs v. Lynch, 4 Penny. 243. In Maynes v. Atwater, 88 Pa. 496, speaking by Mr. Justice TRUNKEY, we said: "The sense of words in connection with what the parties intended to express by them is exclusively for the jury to determine. The judge may not put a legal interpretation on oral words, and make it a matter of positive direction. It is the province of the court to expound the meaning of an instrument but not of words uttered of which there can be no tenor. It is the province of the jury who hear and observe the witness to determine the meaning of what he says."

This case goes back to be retried, and it will be the duty of the trial judge to submit to the jury the testimony bearing upon the question of the alleged notice, with proper instructions as to the legal effect of any notice the jury may find from the evidence was given to the defendant through its trust officer. We direct the attention of the defendant to the fact that the plaintiff's contention is, not that Mr. Dechert gave the defendant sufficient data to prepare proper answers to the attachments, but that it was prevented from furnishing such information by the bad faith and negligent conduct of the defendant's trust officer in failing to notify Mr. Dechert of the filing of interrogatories. What testimony on this subject may be adduced on a subsequent trial we will not anticipate by determining now the legal effect of Mr. Dechert's testimony on the former trial. Nor need we discuss the duty of a garnishee to the defendant in an attachment execution. It is sufficient to say that if he wishes to relieve himself from liability for the funds attached in his hands, he must act in good faith to the debtor, and by using the information in his possession, "contest every inch of ground" to prevent a recovery of judgment by the attaching creditor.

The view we take of the case does not require us to consider seriatim the several assignments of error. The seventeenth assignment is sustained.

The judgment of the court below is reversed, and a venire facias de novo awarded.

MITCHELL and FELL, JJ., dissent.