## Henderson *v.* Sonneborn, Appellant.

*Brokers—Real estate brokers—Commissions—Contract.*

A real estate broker who sues for commissions must establish his employment, either by previous authority, or by acceptance of his agency, and the adoption of his acts. A mere volunteer is not entitled to commissions though he brings the parties together and is the efficient means of procuring the sale.

Where the contract between the broker and his principal is in writing its construction is for the court. But where it is oral, and its terms are in dispute, it is erroneous to charge the jury that if the plaintiff brought the purchaser to the notice of the seller he is entitled to the commissions, and that that is the only question for them to determine, unless under the only reasonable interpretation of which the language of the parties is susceptible, in the light of the circumstances, that is all he was required to do to earn the commissions. What the parties said, and, subject to the foregoing qualification, what was meant by what they said, are questions for the jury.

It is one thing for a real estate broker to hold out for a higher price in order to bring the prospective purchaser up to the price fixed by the prin-

cipal, and quite another thing to insist that the property cannot be bought for less than the price which the agent has named, and that, too, in the face of the purchaser's express offer to pay the price fixed by the owner. Possibly the former might be regarded as not prejudicial to the principal's interest, but clearly the latter would be, in the absence of explanatory circumstances, or at least would have that tendency. Such agent is bound to act toward his principal with the utmost good faith, and exert his skill for his benefit.

Argued Oct. 11, 1905. Appeal, No. 152, Oct. T., 1905, by defendant, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1903, No. 2,253, on verdict for plaintiff in case of Luke D. Henderson, trading as Henderson & Company, v. Louis Sonneborn. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit to recover commissions on sale of real estate. Before DAVIS, J.

The facts are stated in the opinion of the Superior Court.

The court charged as follows :

The plaintiff sues for commissions on the sale of real estate. The law, as applied to this case, is that the person who brings a purchaser to the notice of the seller is entitled to his commission. [The question for you to determine is, did Mr. Henderson bring to Mr. Sonneborn's notice Mr. Gazan, who subsequently purchased these fourteen properties ?] [1] It is not contended that he did it himself, but that it was done for Mr. Henderson by Mr. Martin, who, Henderson says, was in his employ for that purpose. He further says that having found Mr. Gazan, a prospective purchaser, he sent him to Frankford to look at these properties in company with Mr. Martin, and Mr. Martin says that is true, and that he was paid by Mr. Henderson for his services that day. [As I remember Mr. Martin's testimony, he said that he had these properties in hand for Mr. Henderson, as he had very many others, and that he met Mr. Gazan and took him to see the properties, acting in the transaction for Mr. Henderson.] [2] Mr. Gazan testified that Mr. Martin took him to a Mr. Anderson, and that they wanted to sell him the properties for $700 apiece, and, as they could not come to terms, he went to Mr. Penn, who collected the rents, and from him learned the name and address of the

owner, Mr. Sonneborn ; that he then went to Mr. Sonneborn and made the purchase of the properties for $675 apiece, which appears to have been the amount named in the transaction between Sonneborn and Henderson.

[If Mr. Henderson, either by himself or through the machinery of his office, brought the purchaser to the notice of the seller, he is entitled to these commissions. If he did not, he is not so entitled. That is the only question in the case, and it is for you to decide.] [3]

The plaintiff asks me to charge you as follows :

2. If the jury believe that the defendant authorized the plaintiff to seek a buyer for his houses, and the plaintiff, through his agent, brought said houses to the notice of one who subsequently purchased them, the verdict should be for the plaintiff.

I affirm that point.

The question for you to consider is : Was Mr. Martin acting for Mr. Henderson when he brought Mr. Gazan to the notice of Mr. Sonneborn ? If so, the transaction was the same as if Mr. Henderson himself had done so, and the mere fact that the price was mentioned as $700, instead of $675, does not affect this case. It frequently happens that a seller will, in the first place, ask more than he expects to get, and that the purchaser will offer less than he is willing to give, each hoping that a compromise will be effected for about the amount which he has in mind as that which he would pay or is willing to receive. As a matter of fact, Mr. Sonneborn got what he agreed to take for the properties in the first place, that is, $675 for each property. [4]

Counsel for defendant has asked me to charge you as follows :

1. If the jury find that the defendant told the plaintiff he would pay the commission if the plaintiff brought the purchaser to the defendant, your verdict must be for the defendant, unless you find that the plaintiff brought Gazan, the purchaser, to the defendant.

I affirm that point. [5]

You will take the words, " Brought the purchaser to the defendant," in the popular sense. The question is whether he brought him, as a purchaser, to the notice of the defendant.

If he did, he may recover ; if he did not, the defendant should have your verdict.

2. If you find that the defendant agreed to pay the plaintiff a commission if the properties were sold for $1,000 above incumbrances, and that the plaintiff or his agent stated to Gazan, the purchaser, that the price was $700 for each of fourteen properties, or $1,400 above incumbrances, and that Gazan got the correct price for which he purchased from another party, your verdict must be for the defendant.

If there is any testimony in this case to indicate to you that the price of $700 was used by the plaintiff or his agent for the purpose of any fraud, or in any way to interfere with the sale of the property, and was dishonest, then I would affirm that point. If, on the other hand, the testimony shows you that such juggling with the price was simply the ordinary method used by men in such transactions, then I would refuse that point. You have the testimony and will be governed accordingly. [6]

4. Under all the evidence your verdict must be for the defendant.

I refuse that point, and leave the case in your hands. [7]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*William F. Brennan,* for appellant.—The testimony clearly shows that the plaintiff did not sell the houses or bring a purchaser for them to the defendant; that he asked more for the houses than the price for which he was authorized to sell them, and he could not sell them; that the party who brought the houses to the notice of the purchaser was not the agent of the plaintiff, and that party took the purchaser, for the purpose of making a sale of said houses to him, to another party, other than the plaintiff, who could sell the houses, and this last party did not make the sale because he asked the purchaser more than he would pay for them and more than the selling price; and that the party who made the sale was not the plaintiff, and was paid his commissions therefor by the defendant. Plaintiff therefore could not recover: Branson v. Kitchenman, 148 Pa. 541 ; Hershey v. Hershey, 8 S. & R. 333 ; Armstrong v. Hus-

sey, 12 S. & R. 315; Galland v. Schroeder, 21 W. N. C. 103; Citizens' Pass. Ry. Co. v. Ketcham, 122 Pa. 228; Hasson v. Klee, 168 Pa. 510.

During the existence of the relation, the plaintiffs were bound to exercise the utmost good faith towards their principal, and to exert their skill for her benefit. A failure to discharge the duties of the employment must deprive them of the right to commissions for procuring a buyer: DeArmit v. Milnor, 20 Pa. Superior Ct. 369; McCaffrey v. Page, 20 Pa. Superior Ct. 400; Samuels v. Luckenbach, 205 Pa. 428; Carter v. Moss, 210 Pa. 612.

*J. A. Robbins,* for appellee.—It may be conceded that such an extraordinary agreement as is set up by the appellant would be valid, if clearly proven, but it must be clearly proven and not depend upon the superficial construction of a few words selected from the testimony—in other words, it should stand out clearly in the testimony without the aid of italics: Gibson's Estate, 161 Pa. 177; Keys v. Johnson, 68 Pa. 42; Shepler v. Scott, 85 Pa. 329; Heffner v. Chambers, 121 Pa. 84; Jackson v. Carrick, 25 W. N. C. 132.

OPINION BY RICE, P. J., March 12, 1906:

A real estate broker who sues for commissions must establish his employment, either by previous authority, or by acceptance of his agency and the adoption of his acts: Keys v. Johnson, 68 Pa. 42; Earp v. Cummins, 54 Pa. 394; Twelfth Street Market Co. v. Jackson, 102 Pa. 269. "A mere volunteer is not entitled to commissions though he brings the parties together and is the efficient means of procuring the sale:" Samuels v. Luckenbach, 205 Pa. 428; Mayer v. Rhoads, 135 Pa. 601. Where the contract between the broker and his principal is in writing its construction is for the court. But where it is oral, and its terms are in dispute, it is erroneous to charge the jury that if the plaintiff brought the purchaser to the notice of the seller he is entitled to the commissions, and that that is the only question for them to determine, unless under the only reasonable interpretation of which the language of the parties is susceptible, in the light of the circumstances, that is all he was required to do to earn the commissions. What the par-

ties said, and, subject to the foregoing qualification, what was meant by what they said, were questions for the jury. All the authorities bearing upon the subject, from McFarland v. Newman, 9 Watts, 55, down to Philadelphia v. Stewart, 201 Pa. 526, and Lavelle v. Melley, 27 Pa. Superior Ct. 69, sustain this proposition. A few of the many cases are: Brubaker v. Okeson, 36 Pa. 519; Maynes v. Atwater, 88 Pa. 496; Stoddart v. Price, 143 Pa. 537; Fulton v. Lancaster County, 162 Pa. 294; Schweyer v. Walbert, 190 Pa. 334; Scottish Rite, etc., Assn. v. Union Trust Co., 195 Pa. 45; Singer Mfg. Co. v. Christian, 211 Pa. 534; Speers v. Knarr, 4 Pa. Superior Ct. 80; Kelton v. Fifer, 26 Pa. Superior Ct. 603. It appears that the defendant had fourteen houses which he had advertised for sale at $675 each. The plaintiff, who was in the real estate business and a licensed broker, saw the advertisement and sent for the defendant to come and see him, which the defendant did. It is conceded by both sides that an agreement was entered into between them. But there is a substantial dispute as to the terms of the agreement; and in determining whether there was prejudicial error in the instructions complained of in the first, third, fourth and fifth assignments of error we must consider the possibility of a finding by the jury, if the question had been submitted to them, that the defendant's version of what took place at his meeting with the plaintiff was true. He testified: " I went there and he got talking about the properties and what commission I would allow him. I told him I would allow him $25.00 a house if he would bring me a purchaser, as I had given them to other parties in the same way, and wanted to close it out." Being asked later, " What was Mr. Henderson to do with any purchaser that he might secure?" he answered, " Bring him to me." The court then propounded the question, " What was the agreement as far as the property was concerned between you and Mr. Henderson?" To which the defendant replied, " Mr. Henderson was to bring a purchaser to me." It is argued by his counsel that the defendant had a special reason for putting his undertaking in those words, which was that he had advertised his properties and put them in the hands of different persons to dispose of—a fact alleged to have been communicated to the plaintiff—and in order to protect himself against conflicting claims for the commissions it was important

that the plaintiff should bring the prospective purchaser to him. This was a legitimate argument to be addressed to the jury in favor of the defendant's contention that the words were used by him and understood by the plaintiff in their strict sense. This would not have been an unreasonable interpretation under the circumstances; to say the least, the testimony was not such as to justify binding instructions that the jury must reject it upon the ground that it was unreasonable, and if they found that he, or Martin acting for him, brought the houses to the notice of Gazan and showed them to him, and Gazan, having ascertained from another agent that the defendant was the owner, went to him and bought them, the plaintiff would be entitled to a verdict in his favor. Whether the plaintiff could recover upon proof of these facts depended upon the contract between him and the defendant. What this was, and, if its terms were as testified by the defendant, whether the parties adopted them in their literal sense, or meant only that if a person should come to the defendant as a result of the defendant's negotiations the plaintiff would be entitled to the stipulated compensation, were questions for the determination of the jury under appropriate instructions by the court. For the reasons above suggested the first, third, fourth and fifth assignments are sustained.

We are unable to agree with the appellant's counsel that the court's summary of the testimony of Martin as to whom he was acting for was incorrect. In a later portion of the charge the question whether he was acting for the plaintiff was properly submitted to the jury. Therefore the second assignment is overruled.

The plaintiff never met Gazan, the purchaser, and had no negotiations with him. He claims the benefit of the result of Martin's negotiations with Gazan, because Martin was acting for him in the matter. It therefore becomes important to ascertain what Martin did, and to inquire whether his conduct was the exercise of that good faith and proper skill which his employer owed to the defendant. Martin testified that having learned that Gazan had failed in his effort to buy certain other houses at which he had been looking, he called his attention to the houses in question, and took him to see them. This is not in dispute, but from that point the history of the transaction

was given by Gazan. He testified that he asked Martin what the price was, and the latter replied that he could not exactly tell him but he would bring him to a party that could sell the properties, and that following up this suggestion Martin took him to one Anderson. We remark parenthetically that this was not a truthful and candid answer to Gazan's inquiry, if the plaintiff's testimony that he told Martin the price was $675 for each house be accepted. But to go on with the history of the transaction as given by Gazan : the latter testified that he asked Anderson what he wanted for the houses and he said he would take $700 ; that then he offered $650, which Anderson refused, and upon being asked what the lowest figure would be, the latter replied that he would let him know, and subsequently told him there could not be a sale for less than $700 ; that he offered $675 and Anderson replied that they were not for sale for less than $700 ; that he then, of his own motion, set out to ascertain who the owner was, and upon inquiry of the agent who collected the rents was directed by the latter to the defendant; that thereupon he went to the defendant and bought the houses for $675 each. In view of this testimony of the plaintiff's own witness, which was not contradicted nor explained, we think the answer to the defendant's third point for charge, and the instructions upon the same subject given in answer to the plaintiff's second point, did not fully meet the requirements of the case. It is one thing for such an agent to hold out for a higher price in order to bring the prospective purchaser up to the price fixed by the principal, and quite another thing to insist that the property cannot be bought for less than the price which the agent has named, and that, too, in the face of the purchaser's express offer to pay the price fixed by the owner. Possibly the former might be regarded as not prejudicial to the principal's interest, but clearly the latter would be, in the absence of explanatory circumstances, or at least would have that tendency. Such agent is bound to act toward his principal with the utmost good faith, and exert his skill for his benefit : Pratt v. Patterson, 112 Pa. 475 ; Wilkinson v. McCullough, 196 Pa. 205; DeArmit v. Milnor, 20 Pa. Superior Ct. 369 ; McCaffrey v. Page, 20 Pa. Superior Ct. 400. The refusal of Gazan's offer to pay $675 each for the houses, the price fixed by the defendant, accompanied by the positive

statement that they could not be bought for less than $700 each, without directing him to the defendant, or informing the defendant that he had made the offer, or even that he was a possible purchaser, was not acting with that skill, and good faith toward the defendant, which the plaintiff owed to him. If notwithstanding this he had subsequently made the sale, or his subsequent efforts had brought the seller and purchaser together, a different question would be presented. But according to the testimony of his own witness, neither he nor any one acting for him did anything to further the sale after the refusal of Gazan's offer. Under the facts developed in the presentation of his own case, his agency was not the immediate and efficient cause of the sale: Earp v. Cummins, 54 Pa. 394; Kifer v. Yoder, 198 Pa. 308. We conclude that the sixth and seventh assignments of error must be sustained.

Judgment reversed.