# Smith *v.* J. I. Case Threshing Machine Company, Appellant.

*Bailment—Installment lease—Default—Right of lessor to retake possession—Damages.*

1. Where a contract of bailment in the form of an installment lease provides that in case of default the lessor shall have a right "to forthwith terminate this lease, take immediate possession of the said leased property, and collect the rent earned therefor to the date of taking the same," the lessor cannot after he has accepted an installment in default retake possession of the property before another default occurs; and this is the case although he may have enforced his demand for payment of the installment by legal process.

2. Where an installment lease of personal property gives the lessor the right on default by the lessee, to take immediate possession of the leased property, and collect the rent earned therefor to the date of taking the same, and the lessor takes possession of the property after the payment of an installment which had been in default, and it also appears that the lessee had a right to purchase the property at the end of the term for a nominal sum, the measure of damages against the lessor was the amount of rental paid subject to the deduction for the use of the chattel for the time that it remained in the possession of the lessee.

3. Where a plaintiff has only a special limited interest in a chattel converted with a right to possession, and the general property is in the defendant, the plaintiff is entitled to recover only the full value of his special limited interest, and not the full value of the property.

4. A bailment even for a stipulated period may be dissolved by mutual agreement at any time. Where the evidence as to such mutual agreement is conflicting, and the words of a conversation between the parties in reference to it are susceptible to more than one interpretation, the question of the existence of such an agreement is for the jury.

Argued Nov. 23, 1911.   Appeal, No. 110, April T., 1911, by defendant, from judgment of C. P. Beaver Co., Sept. Term, 1908, No. 199, on verdict for plaintiff in case of W. J. Smith and W. S. Smith v. J. I. Case Threshing Machine Company.   Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ.   Reversed.

Assumpsit for breach of contract. Before HOLT, P. J.
The facts appear in the opinion of the Superior Court.

At the trial the court charged in part as follows:

[On the other hand, gentlemen of the jury, the plaintiffs take the position that there was no forfeiture or termination of the contract, but that the process of execution was simply a means of payment; and that on June 9, when the machinery was taken away by the agent of the defendant company, the contract was still in force, and the title to the machinery at the time still in the defendant. The plaintiffs agree that at whatever time this machinery was taken, the title to it was in the defendant company. We say to you, that in view of this admission, the plaintiffs at most would not be entitled to recover anything more than the amount of rental which they had paid prior to the time of the taking of the machinery for default, this lease stipulates that the defendant company had the authority to proceed and collect any rentals due. If the defendant company took this machinery out of the possession of the plaintiffs, and the title at the time it was taken was still in the defendant company, then it could not be said that the defendant company had elected to sue and recover on all of the notes, in view of this admission of the plaintiffs that the contract was still in force at whatever time this machinery was actually taken by the defendant company; so that you will inquire simply how much had been paid as rental prior to the time of the default. It is conceded on both sides that that amount was $596.50, and that it was paid on June 24, 1907.

In cases of this character the measure of damages is the amount of rental paid, subject to a deduction for the use of the machinery for the time that it remained in the possession of the lessee. But it is conceded here that the rental that accrued from the time of the delivery of the possession of the machinery down to the time of the taking it away had been paid through this process of execution. But you will take into consideration that it would be

94 SMITH *v.* J. I. CASE MACHINE CO., Appellant.

some inconvenience and some expense to the defendant company to take this machinery away again to its place of business; and we say that it would be nothing more than right for you to make an equitable allowance for so much as in your opinion, under all of the circumstances of this case, should in good conscience be deducted from the $569.50 for the trouble and expense in taking away the machinery; and in such amount as you find, having made this equitable and just allowance, you would add interest at the rate of six per centum from the date of payment down to the date of the rendition of your verdict. You will take this case, gentlemen, and ascertain what that deduction is.] [2]

Verdict and judgment for plaintiff for $570.20. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant; (2) portion of charge as above, quoting it, and refusal of judgment for defendant n. o. v.

*J. Sharp Wilson*, with him *Arthur E. Barnett*, for appellant, cited: Forrest v. Buchanan, 203 Pa. 454; Sheasley v. Condrin, 10 Pa. Dist. Rep. 56.

*James L. Hogan*, with him *C. B. McCarter*, for appellees, cited: Campbell Printing Press & Mfg. Co. v. Hickok, 140 Pa. 290; Seanor v. McLaughlin, 165 Pa. 150; Scott v. Hough, 151 Pa. 630; Levan v. Wilten, 135 Pa. 61.

OPINION BY RICE, P. J., April 23, 1912:

By writing dated April 6, 1907, the parties entered into a contract of bailment whereby the defendant leased to the plaintiffs a threshing machine and appurtenances for a term beginning on that date and ending on November 15, 1909, the plaintiffs agreeing to pay as rent or hire the sum of $1,708.50, as follows, namely: $569.50 on delivery, and installments of $284.75 each on September 15, 1907, September 15, 1908, November 15, 1908,

and November 15, 1909, the deferred payments to be secured by judgment notes bearing even date with the lease. It was further agreed that at the expiration of the term, or earlier termination of the lease, the lessees would deliver the machine to the lessor, and if upon its return the installments of rent had been paid and the stipulations and conditions of the lease had been faithfully performed by the lessees, they should have ten days thereafter within which to exercise an option to purchase the machine for $1.00 in cash. The lease contained this important clause: "In case the lessees shall fail to keep and perform any of the terms and agreements of this lease, then the whole amount of rent represented by said notes shall forthwith become due and payable, and said lessor, its successor or assigns, shall have the right at its or their option to collect the same or to forthwith terminate this lease, take immediate possession of said leased property and collect the rent earned therefor to the date of taking the same."

This action of assumpsit was brought to recover damages for breach of contract, it being alleged, inter alia, in the plaintiffs' statement, that on or about June 3, 1908, without the consent of the plaintiffs, the defendant removed the machine from the barn in which the plaintiffs had stored it, that the defendant still has possession of it and has neglected to deliver it over to the plaintiffs, so that the plaintiffs may have the possession and use of the same according to the stipulations of the agreement "by reason of which the plaintiffs have been deprived of said machine and of the profits and advantages which they otherwise would have derived from the use of said machine . . . . and have lost eight hundred and fifty-four and twenty-five hundredths dollars expended by the said plaintiffs upon said threshing machine, . . . . to the damage of said plaintiffs of $1,708.50." The materiality of this reference to the pleadings will appear later.

It was shown upon the trial that upon delivery of the machine to the plaintiffs they made the down payment of

$569.50 and gave judgment notes for the other installments, and that the defendant caused judgments to be entered on these notes. It was shown also, that the plaintiffs did not pay the first installment of $284.75 at the time it fell due and that the defendant issued a fi. fa. upon the judgment therefor. The plaintiffs paid the amount of this execution to the sheriff in February, 1908, and in the following June the defendant retook possession of the machine.

1. It is argued that the plaintiffs' failure to pay the installment on the day it fell due gave the defendant an absolute legal right to retake possession, notwithstanding the fact that at the time it undertook to exercise that right the installment had been paid. We cannot agree that the words of the contract require or are fairly susceptible of a construction, that would accomplish such unconscionable result. The right which the contract gave the defendant on the occurrence of the default was to take immediate possession of the leased property, and having done so then to collect "the rent earned" up to the date of taking. It did not have the right to collect the installment and after doing that then to retake possession before another default occurred. If after the default the defendant had demanded payment of the installment, and the plaintiffs had complied with the demand, could it be contended that the right to retake possession because of that default remained? Clearly not. By demanding and accepting payment of the installment after it was due the defendant would be deemed to have been acting in affirmation of the contract, to have waived the default and to have elected to treat the bailment as still existing: Kelley Springfield Road Roller Co. v. Schlimme, 220 Pa. 413, 417. We cannot see that the case is different because the defendant enforced its demand by legal process. When the installment was paid and accepted its right to retake possession because of that default was gone. This conclusion is supported by the principles enunciated and applied in the case last cited and in the cases cited in the opinion of the

learned judge below: Campbell Printing Press & Mfg. Co.
v. Hickok, 140 Pa. 290; Seanor & Bierer v. McLaughlin,
165 Pa. 150; Scott to use v. Hough, 151 Pa. 630; Ketcham
v. Davis, 31 Pa. Superior Ct. 583.    It follows that the de-
fendant was not entitled to binding direction in its favor,
and therefore the first and third assignments are overruled.

2. The instructions contained in the second assignment
are complained of as not giving the correct measure of
damages.   The general rule is that where the plaintiff
has only a special limited interest in a chattel converted,
with a right to possession, and the general property is in
the defendant, the plaintiff is entitled to recover only the
full value of his special limited interest and not the full
value of the property: 28 Am. & Eng. Ency. of Law (2d
ed.), 730; 1 Sedg. on Damages (8th ed.), sec. 78; Sutherland
on Damages (3rd ed.), secs. 139 and 1136.   The rule is
different where the goods have been taken from a bailee
in possession by a stranger to the title: McCrossan v.
Reilly, 33 Pa. Superior Ct. 628.   Here the general property
was in the defendant, and, passing the question which we
shall consider later, the plaintiffs had a special limited
interest; that is, they not only had the right to the pos-
session and use of the property for a definite term, upon
payment of the installments afterwards to accrue, but
also had the right to purchase the property at the end of
the term for a nominal sum.   How is the value of such
special limited interest to be ascertained?   Where goods
were sold by the defendant to the plaintiff, and delivered,
but the title was not to pass until complete payment was
made, the plaintiff in an action for conversion by wrong-
fully resuming possession of the goods, can recover only
his interest; that is, the amount of his payments: Levan
v. Wilten, 135 Pa. 61.   This case has some analogy to the
case at bar.   Further, the contract under consideration
contained the provision, "in no event shall the company
be liable otherwise than for the return of the cash and notes
actually received by it."   The defendant had been paid
the amount of the note for the first deferred installment,

and since suit was brought has satisfied the judgments entered on the other notes and thus extinguished them. Under the instructions given by the court all that it was required to do further, was to return the cash payment of $569.50, less such equitable allowance as the jury should deem just for the inconvenience and trouble it was put to in removing the property to its place of business. In the absence of satisfactory evidence that the plaintiffs' special limited interest was worth less than would be recoverable under these instructions, we think the defendant, at least, has no just cause to complain of them, so far as they relate to the measure of damages.

3. It is further argued that the instructions quoted in this assignment were erroneous because they withdrew from the consideration of the jury, the question whether the defendant retook possession of the machine with the plaintiffs' consent. There was testimony from which the jury could have found that when, on January 8, 1908, the defendant's representative called on the plaintiffs to collect the overdue installment of September, 1907, the latter asked an extension for another year, and upon being informed by him that it could not be granted, said that the defendant would have to take the machine back. Much stress is laid by appellant's counsel on this conversation, but in view of the fact that in the following month the plaintiffs paid and the defendant accepted the overdue installment, we are of the opinion that a termination of the bailment by mutual consent could not be implied as matter of law or inferred by the jury as matter of fact from the conversation that took place in January and that alone. But it is alleged that on April 9, 1908, which was after the installment had been paid, further conversation took place between the plaintiffs and the defendant's representative. We quote the latter's testimony: "I saw the old gentleman on the farm where they had moved. I told them that if they could furnish security for the rental that was coming due for that year, show us in some way, convince us about se-

curity, that we could get our money, that we would still
continue to let them have the machine.  He referred me
to his son: Q. Did you have any conversation with his
son?  A. Yes, sir.  Q. Where?  A. On the road between
Galilee and their home.  Q. What, if anything, did you
say to him and he to you in regard to the machine?  A. I
gave him the same proposition, to furnish us security and
they might have the machine.  Q. What did he say?
A. He said he wouldn't do it.  Q. What did he say in
regard to it?  A. He said we could take the machine and
go to hell with it."  This testimony was directly con-
tradicted by the plaintiffs with whom the conversation
is alleged to have been had, and circumstances are re-
ferred to in the argument of plaintiffs' counsel tending
to show its improbability.  Again, the words testified
to, when considered in connection with the context, do
not necessarily import but one meaning which it was the
duty or the province of the court to declare.  Where
the words of a conversation are susceptible of more than
one interpretation, what the party said and what was
meant by what they said are questions for the jury:
Maynes v. Atwater, 88 Pa. 496; Scottish Rite, Knights
Templar & Master Masons' Aid Assn. v. Union Trust
Co., 195 Pa. 45; Henderson v. Sonneborn, 30 Pa. Supe-
rior Ct. 182, and cases cited at page 187; Morgan v. Wil-
liams, 39 Pa. Superior Ct. 580.  It will not be disputed
that a bailment even for a stipulated period may be dis-
solved by mutual agreement at any time.  Therefore,
if the defendant retook possession of the machine pur-
suant to and on the faith of free, unconditional and un-
revoked consent given by the plaintiffs, we fail to see how
the plaintiff could recover under the pleadings to which
we have referred.  But whether or not this defense was
established depended upon the determination by the jury
of the dispute as to the words used, and, if they decided
that dispute in favor of the defendant, then upon their
determination of what was meant by what was said, hav-
ing regard to the circumstances under which the words

were uttered. It is thus seen that this branch of the defense involved a mixed question of law and fact, which should have been submitted to the jury with appropriate instructions. It is not disputed that the effect of the instructions given was to withhold it from their consideration. For this reason, and this alone, the case must go back for a retrial.

The judgment is reversed and a venire facias de novo awarded.