## Gibbons, Appellant, *v.* Monongahela River Consolidated Coal & Coke Co.

*Brokers—Commissioners—Agency—Case for jury.*

In an action to recover commissions on the sale of a steamboat,
an implied obligation to pay a commission is established by proof
that plaintiff, telegraphed to defendants, stating desire to purchase
a steamboat of given dimensions, asking them if they had any-
thing to offer, and stating that their commission will be five per
cent. on the purchase-price; that defendants telegraphed in reply
"Can offer boat for your inspection upon your arrival here," and
that plaintiff wrote that their agent, naming him, would call upon
defendants "and if you have anything to offer, and sale should go
through, we would like of course to be protected on five per cent.
commissions."

In such a case where the plaintiff's agent accompanied by an-
other person calls upon defendants, and the agent states that the
other person was working with him, and it appears that the sale

was actually made to the other person in the agent's absence, the plaintiff is entitled to have the question submitted to the jury, as to whether the sale was made by him, if it appears that the agent named in the letter was notified of the sale, was present when the deal was finally consummated and took possession of the boat.

To entitle a broker to recover commissions for the sale of property, he must establish that he was the procuring cause of the sale, according to his contract. This is usually a question of fact for the jury.

Argued May 2, 1917. Appeal, No. 152, April T., 1917, by plaintiff, from judgment of C. P. Allegheny Co., April T., 1915, No. 761, on verdict for defendants in case of M. J. Gibbons, doing business as Gibbons & Company v. The Monongahela River Consolidated Coal & Coke Co. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit for commissions for sale of a steamboat. Before CARPENTER, J.

At the trial it appeared that plaintiff, a steamboat broker, located at New Orleans, La., having a party, the Transcontinental Petroleum Company, on December 22, 1913, sent the following telegram to appellee:

"We have planned leaving here to-morrow in search of towboat thirty by one thirty-five with fifteen inch cylinders, six-foot stroke, three or four boilers. Have you anything to offer? Our commission will be five per cent., total purchase-price. State when inspection can be made. Answer."

On December 24, 1913, and on January 8, 1914, respectively, plaintiff wrote to C. C. Bunton, in both of which letters he advised Mr. Bunton that one J. R. Barbour was coming up the river in search of boats and would call on Mr. Bunton. In the first of these letters, it was stated:

"Capt. J. R. Barbour left yesterday for upper Ohio river points, and will no doubt call on you and if you have anything to offer, and sale should go through, we

234 GIBBONS, Appel., *v.* MONONGAHELA R.C.C. &·C. CO.

Statement of Facts—Charge of Court below. [68 Pa. Superior Ct.

would like, of course, to be protected on five per cent. commission"; and in the second:

"Capt. J. R. Barbour, whom I wired and wrote you about eight or ten days ago, will call on you at Pittsburgh......Should he close deal with you, we would naturally expect our five per cent. commission."

Barbour accompanied by one Davis presented themselves at defendant's office and Barbour stated that Davis was working with him. Negotiations were begun which resulted in the purchase of the steamboat "Volunteer" for the sum of $22,000 which was in excess of the price originally offered. The sale was actually made to Davis when Barbour was absent from illness, but Davis informed Barbour of the sale, and he was present at the consummation of the deal, and took possession of the boat.

The court charged in part as follows:

[The boat was finally purchased, and paid for by Davis. It is alleged that there is some testimony which indicated that he was simply the buyer for another company, and that the coal company knew that. But I am bound to say to you that there is not sufficient evidence to justify you in finding that the company knew that it was selling that boat to any other person than Davis himself. We have positive evidence to that effect on the one side, and the evidence on behalf of the plaintiff is not strong enough, is not clear enough, is not specific enough to warrant you in finding that the coal company did know, as a fact, that Davis was the mere representative of somebody else, and was not purchasing in his own behalf. (2)] [Captain Barbour says that he talked to Bunton, and told him about it, and that Bunton knew that he, Barbour, was buying that boat for or through the plaintiff here; you will remember that. Barbour said he talked to Bunton, and that McCue was talking to somebody else at the time, and did not hear the conversation. McCue of course says he never did know that Barbour was there as the party who was sent up by

Gibbons, and Barbour himself says that his conversation, indicating that he was the man whom Gibbons had referred to, was held with Bunton. Bunton denies that. (3)] [So so far as any direct notice to the coal company is concerned, to the effect that Barbour was the man referred to by Gibbons, you have but two witnesses. You have the deposition of Barbour, who says he told Bunton, and you have the statement of Bunton, taken here in open Court, that he did not say anything of the kind to him. (4)] The difficulty then seems to arise around that point. Did the coal company know—had it any reason to know that Davis, the purchaser of that boat, was a customer sent there directly or indirectly by Mr. Gibbons? If, in good faith, the company sold that boat to Mr. Davis, without any knowledge that he was other than an independent buyer, and without any knowledge that Gibbons had sent him, of course there can be no recovery against the coal company, because there is nothing in the correspondence to indicate that a man named Davis was coming to look at that boat. It is for you to say whether, under the circumstances in which Barbour and Davis presented themselves to Mr. Joys, and then carried on their negotiations, the company had any room to suspect or believe that these men were the customers of the plaintiff in this action. [You have, as I said a moment ago, the testimony of Captain Barbour that he talked to Bunton about it, told him who he was—and on the other hand you have the statement of Bunton that he did not tell him anything of the kind, and you have the admitted fact that nobody else is alleged to have been told that Barbour and Davis were the customers from the south for the purchase of that boat. (5)] In connection with that you will remember what I said awhile ago about how they came in with their letter of introduction, and where that letter of introduction came from. Before the plaintiff can recover, he must satisfy you, by the weight of the evidence—that is, the preponderance of evidence—that he was the broker or agent

236 GIBBONS, Appel., *v.* MONONGAHELA R.C.C. & C. CO.

Charge of Court below—Opinion of the Court. [68 Pa. Superior Ct.

who brought about this sale, and that these parties, Barbour and Davis, presented themselves to the company here under such circumstances as to be notice to the company that they were from Mr. Gibbons.

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were, among others (2-5), above instructions quoting them.

*Lowrie C. Barton,* for appellant.—"It is enough for the broker to bring the parties together and the result of their meeting is that a contract is made": Showaker v. Kelly, 21 Pa. Superior Ct. 390; Holmes v. Neafie & Levy, 151 Pa. 392; Reed v. Reed, 82 Pa. 420; Keys v. Johnson, 68 Pa. 42.

That defendant knew that Davis and Barbour had been sent by plaintiff is conclusively shown by the evidence.

*Don Rose,* for appellee.—In order to recover in a case like this, plaintiff must show his employment, that the sale was made through his instrumentality, and that the thing sold, the terms of sale, and the person to whom it was made, were all in accordance with the terms of his contract of employment: Samuels v. Luckenbach, 205 Pa. 428; Speer v. Benedum-Trees Oil Co., 239 Pa. 180; Kifer v. Yoder, 198 Pa. 308; Mayer v. Rhoads, 135 Pa. 601; Henderson v. Sonneborn, 30 Pa. Superior Ct. 182.

OPINION BY KEPHART, J., October 8, 1917:

This is an action by a broker to recover commission for the sale of a steamboat. A broker becomes entitled to his commissions in a contract for the sale of property when he procures a party with whom the owner is satisfied: S. V. Thompson Co. v. Goldman, 41 Pa. Superior Ct. 209; Keys v. Johnson, 68 Pa. 42; Holmes v. Neafie & Levy, 151 Pa. 392; Irons v. Snyder, 49 Pa.

Superior Ct. 522; Kifer v. Yoder, 198 Pa. 308.  But a mere volunteer is not entitled to commission if he bring the parties together: Samuels v. Luckenbach, 205 Pa. 428; Henderson v. Sonneborn, 30 Pa. Superior Ct. 182. And where the contract is specific, that is, limited to a certain property at a specified price, a sale by the owner of a different property or chattel will not entitle the broker to a commission even though it was through him the parties were brought together and it may be said that such introduction was "the efficient means of producing the sale."  He is merely a volunteer without precedent authority or subsequent acceptance: Samuels v. Luckenbach, 205 Pa. 428-432; Yerkes v. Osborne, 42 Pa. Superior Ct. 253.  Of course, where the broker assists in selling the different property, and his work is accepted, the rule is different.  The theory upon which the case was tried was that the contract was specific in that Captain Barbour was named as the person who would buy the boat, and not having done this, there can be no recovery.

The contract was made from letters and telegrams and the trial court correctly held that there was "sufficient to raise an implied obligation on the part of the coal company to pay the five per cent." commission. The telegram from the defendant was an acceptance of the plaintiff's offer to open negotiations for the sale of one of defendant's boats on the terms named in the letter. The letter of December 24th notified the defendant that "Captain J. R. Barbour left yesterday for upper Ohio river points and will no doubt call on you, and if you have anything to offer and sale should go through, we would like of course, to be protected on 5 per cent. commission."  When negotiations were opened by Captain Barbour with the defendant's manager Bunton, who sent the telegram, Captain Barbour was accompanied by one Davis, and it is the defendant's contention that Davis was the purchaser of the boat, acting independently without any connection with the plaintiff or

Captain Barbour. To entitle the plaintiff to recover a commission for the sale of property he must establish that he was the procuring cause of the sale, according to his contract. This is usually a question of fact for the jury. Both Barbour and Davis came from New Orleans, undoubtedly at the suggestion of the plaintiff. It is not material who formally introduced them to the defendant's manager. A part of the plaintiff's statement of claim admitted by the affidavit of defense, reads: "That said J. R. Barbour, accompanied by one George E. Davis, agent for the said Transcontinental Petroleum Company, under directions of plaintiff came to the City of Pittsburgh and called upon the said defendant company, and purchased from it the steamboat 'Volunteer,' for the price or sum of twenty-two thousand dollars ($22,000)." This would show Davis's connection with the transaction. If Barbour was acting for others this would not affect plaintiff's right to commissions. Captain Barbour testifies that he went to the company's office, and met Mr. Bunton and spoke to him about the sale of the "Volunteer" and three other boats. At that conversation he told Bunton that they were a couple of days late—meaning Davis and himself—that Mr. Gibbons, the plaintiff, had recommended the buying of the "Volunteer." Bunton stated that he had a wire from the plaintiff. Barbour further stated that Mr. Davis was the agent of the Transcontinental Petroleum Company and conducted all the negotiations as a representative of the petroleum company; that he was present the day the sale was made by Mr. Davis, and took the steamboat to Tampico, Mexico; that Mr. Davis was working under his direction, and that he had knowledge of the deal finally closed. If this testimony was to be believed by the jury, it, with the portion of plaintiff's claim admitted of record, would show that the defendant knew that both Davis and Barbour came from the plaintiff, and it was through the plaintiff that the sale was made. The mere fact that the bill of sale was made to Davis

would not change the character of the transaction nor would the fact that Davis violated instructions and purchased for a larger price be material if he notified Barbour of the sale, as he afterwards did, and Barbour was present when the deal was consummated and took possession of the boat. Captain Barbour's testimony was denied and considerable evidence was submitted to show it to be untrue. This was for the jury. The court erred in charging the jury, there was not sufficient evidence to justify them in finding that the company knew that it was selling that boat to any other person than Davis. At the close of the charge, when the court's attention was called to this error, he emphasized it by saying: "The instruction I gave you as to the knowledge of the company, I will allow to stand." Bunton, the manager, the man who sent the telegram, met the parties when they reached Pittsburgh. Notice to him under the circumstances was notice to the company. McCue's lack of knowledge was not material. The court did not give full effect to the testimony of Barbour and to the defendant's admission. In fact, the effect of this admission was brushed aside. If these facts were believed by the jury, it could properly find for the plaintiff. The second assignment of error is sustained.

We do not think there was any substantial harm done the plaintiff as complained of in the other assignments of error. The court overlooked Mr. Barbour's testimony in commenting on the sixth point presented by the appellant. It is only necessary to sustain the second assignment of error which is here done.

The judgment is reversed and a venire facias de novo is awarded.