Myers et al., Appellants, *v*. Ohio-Penn Gas & Oil Co.

Argued September 26, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Geo. F. Whitmer,* with him *John M. Myers,* for appellants.—A ratification involving the sale, purchase or leasing of lands, in order to be valid, should be in writing: McDowell v. Simpson, 3 Watts 129; McClintock v. South Penn Oil Co., 146 Pa. 144.

Where a parol agreement changing or adding to a previously executed contract under seal, such as an oil lease, is subsequently made, the whole becomes parol: Stoddard v. Emery, 128 Pa. 436; Goldstein v. Nichols, 273 Pa. 107.

Where a person attempts to encroach on the lands of a married woman upon an unfounded claim of right under a deed, he cannot set up an alleged parol assent to the encroachment by the married woman as an estoppel against her.

The location of the well by Hall and his manner of announcing the fact indicated an intention to drill the well where it was drilled notwithstanding the written provision in the lease and without any consent on the part of the lessors.

*H. M. Rimer,* with him *A. A. Geary,* for appellee.—The privilege to drill on the prohibited area was a mere license: Huff v. McCauley, 53 Pa. 206; Baldwin v. Taylor, 166 Pa. 507; Calhoun v. Jester, 11 Pa. 474.

The license so given and acted upon was not revocable: Bishop v. Buckley, 33 Pa. Superior Ct. 123; Pierce v. Cleland, 133 Pa. 189.

A parol license, coupled with an expenditure of money, will estop without lapse of time: Kay v. R. R., 65 Pa.

269; Cohl v. Power Co., 216 Pa. 283; Reagan v. Cyrran, 226 Pa. 265.

The lease was not forfeited: Smith v. Peoples Nat. Gas Co., 257 Pa. 396; McKnight v. Kreutz, 51 Pa. 232.

Opinion by Mr. Justice Frazer, November 26, 1928:

Appellants by their bill sought to enjoin defendants from continuing the production, removal and disposal of natural gas from a well drilled by appellees, under the terms and conditions of a lease executed between the parties to the proceeding, and to have the lease forfeited and cancelled on the ground of breach of its covenants by defendants. The material complaints set forth in appellants' bill are to the effect that lessees (defendants) located and drilled the well in dispute at a point less than twenty rods from the building of lessors (plaintiffs) in violation of the provision that no well should be drilled within the prohibited area without the written consent of both parties; that plaintiffs were not consulted with regard to the selection of the location; that they did not consent in writing or otherwise to the drilling at the point selected; that the well was completed without the written or oral consent of lessors; that by reason of these violations the lease has become void, and praying that defendants be perpetually enjoined from going upon the premises and carrying away or interfering with the gas produced from the well in question. The chancellor before whom the case was heard, does not, in his findings of fact and conclusions of law, sustain a single one of the above complaints, and has decreed that the bill be dismissed. Our examination of the record of the case leaves us in no doubt as to the correctness of his judgment.

All important questions involved in this litigation may be taken as subsidiary to but one: Was the selection of the location, the setting up of a designating stake and the drilling and completion of the well a perversion of the terms of the lease, when such action was taken in

pursuance of a supplemental parol agreement plainly expressed by the words and confirmed by the consent of plaintiffs?

The lease in question is signed by all four plaintiffs; the case, however, as it comes before us, involves but one lessor, whose rights are in question,—Mrs. Nannie J. Myers; for this lease, as the court below correctly finds, refers to two tracts of land, both distinctly separate, situated in different townships, and owned by parties in different shares; consequently by the terms of the instrument its covenants apply to the tracts severally. One of these tracts only is involved in this litigation, a farm of seventy acres in Piney Township, Clarion County, and of which Nannie J. Myers, one of appellants, was the sole and exclusive owner, and upon which she resided with her husband, Ambrose Myers. None of the other plaintiffs had any interest in this farm, nor in the well drilled on the property, and, as the record reveals, they, at no time, in any manner, took part in the transactions between Mrs. Myers and defendants with regard to the location and drilling of the well on her tract of land.

Of the thirty-three errors assigned, we do not find any of substantial foundation. By the terms of the lease, forfeiture may be declared if there is a failure by lessees (defendants) to commence operations at the time designated, or, in lieu thereof, to make payments of rentals as provided for, or to commence operations for the development of the premises for gas, or oil and gas, within four months from the execution of the agreement, or the drilling of a well at a point less than twenty rods from lessor's buildings.

Plaintiffs claim lessees did not commence operations within the prescribed time and that rentals were not paid as provided for. The chancellor finds exactly the reverse, to the effect that not only were operations begun within the time stipulated but also that checks for the payment of rentals were regularly mailed to Mrs.

Myers, of which checks she accepted the first one, but thereafter returned all others. We find nothing in the record to show that upon returning the checks she gave reasons to defendants for so doing. But, as the first check, mailed March 4, 1925, the date at which operations were actually commenced by lessees, was accepted by Mrs. Myers, unquestionably the relation of landlord and tenant existed at that date (Smith et al. v. Peoples' N. Gas Co., 257 Pa. 396, 400) ; and as lessees began operations within the time fixed by the lease and operated diligently, at great expense, with the full knowledge and consent of lessor, and also regularly mailed to her the rental checks, no right of plaintiff to claim a forfeiture of the lease for nonpayment of rentals at any time existed. As for the contention that operations by lessees were not commenced within the time fixed by the agreement, the court below found such contentions to be wholly without foundation. The lease provided that lessees were to "commence operations for the development of said premises for oil or gas within four months from the execution of this agreement." The lease was dated November 12, 1924, and on March 4, 1925, lessee entered upon the premises, set up a stake designating the site of a well, and operations were continued next day and henceforth without cessation to completion of the well. Here certainly there was no breach of the covenant relating to the beginning of the work of drilling and finishing the well.

It is obvious that plaintiffs rely for success in this dispute upon their claim that defendants violated the terms of the lease in the matter of the selection of a location for the well and drilling the same. A covenant in the agreement provides: "No well to be drilled within twenty rods of the present buildings without the written consent of both parties." It is admitted that a location was selected on the property owned exclusively by Mrs. Myers, and a well drilled and completed at a distance less than twenty rods from her buildings, com-

prising a barn and dwelling house, which she occupied with her husband as a residence. That of itself would constitute a breach and be ground for forfeiture. It would certainly be conclusively a breach if it were a fact, as plaintiffs declare in their bill, that none of the plaintiffs "consented either in writing or otherwise to the drilling of the well at the place mentioned."

Defendants admit that no such consent was given in writing, but claim the well was located, drilled and completed with the full consent and knowledge of Mrs. Myers, lessor, in pursuance of a supplemental oral agreement with her, to the effect that defendants might drill the well at the place selected, which was less than twenty rods from her buildings. It is clearly settled that parties who have undertaken contractual obligations by an agreement under seal, may nevertheless enter into a new parol agreement creating obligations separate from the old ones and at variance with them, and such new agreement will be binding (9 Cyc. 697) ; and, as said in Masterson v. Amarillo Oil Co., 253 S. W. 908, 913, parol agreements, even though they may add to, change, modify or even abrogate the written contract entirely, are admissible when exact justice requires it. See also 22 C. J. 1273. The parol supplemental agreement in the present case modified the lease in question here, to the extent of permitting the drilling of a well at a place which was not, by the original provision of the instrument, to be used for such purpose; and it was primarily a parol agreement between appellant, Mrs. Myers, and lessees, and later unequivocally acquiesced in by her husband, whom she designated, after she had agreed to the modification of the lease, as her agent in the affairs of the lease. The agreement was consequently not made by lessees with the husband, but with the owner of the land as principal. For substantiation of the conclusion we need go no further than to the testimony of lessor herself. On March 4, 1925, less than four months from the execution of the lease, Hall, the original lessee, who

had in the meantime assigned it to the Ohio-Penn Gas & Oil Company and in which corporation he retained a financial interest, went upon the leased premises, accompanied by Gillingham, a drilling contractor, and found Mrs. Myers at her home. Her husband was not present, and they informed her they had come to mark a place at which to drill a well. She told them she was the owner of the property and at their request pointed out the boundaries of her farm. They proceeded to select a site for a well and set up a stake. Returning to the residence of Mrs. Myers, who was informed of the location chosen, Hall, as he testified, said to her: "It's pretty close, closer than what the lease calls for to your buildings; but I don't have the lease along, and don't know what it calls for; and then I said: 'Will that be satisfactory to you?' and she said, 'Yes.' " Notwithstanding that, by her testimony at the trial, Mrs. Myers denied making such reply, her own testimony is conclusive that she herself agreed to the modification of the lease. She made no objection, no protest, but declared, while Hall was at her residence, that her husband was her agent "in these matters"; that Hall should see him about the location of the well and that whatever was satisfactory to him would be to her. Her testimony on this phase of the case is as follows: "They said...... they asked if he [her husband] cared, or something to that effect. I said they could go to see him, that I didn't know." On cross-examination: "Q. Then you told him to go and see him [the husband]; that he was your agent in the matter? A. I told him to go see him. Q. Didn't you tell him that your husband was your agent in the matter? A. I told him he done all the business for me......Q. Didn't you tell them at that time, after they told you about sticking the stake, that it would be all right with you? A. I said if they would go see my husband, to go and see him"; and further on she said, "I told them if they would see him and it was satisfactory with him, it was with me."

Whatever equivocation there may be in these replies by plaintiff, her real understanding of the situation is plainly perceptible. She herself had no objection to the well being drilled nearer than twenty rods from her buildings. It was in fact satisfactory to her, and she agreed to that location, but as she was not sure what her husband would think about it, lessee might talk the matter over with him; and there is no reservation in her testimony that even if he did oppose the location of the well, she would retreat from her agreement. She was not fluctuating or in doubt as to herself, and lessee had full right to take her words, as she undoubtedly intended them to be taken, as a complete oral agreement to modify the lease to the extent of changing the provision relative to locating a well. She had a right to make such agreement. Appellees claimed no interest in the land and no such interest was involved. The designation of the location of the well was one of the incidental sequences of lessee's procedure under the lease; and if, as the sole owner of the land and the one alone who might suffer from unsatisfactory results, she chose to allow a well to be drilled within the prescribed area, that was her privilege; and, as none of the other plaintiffs had an interest in the property, their consent to the modification of the lease was not required. However, we need not further discuss this point since the subsequent acts of both husband and wife constituted a complete and continued consent to and acquiescence in the oral agreement. When informed of the change made in the site of the well, the husband not only made no objections, but a day or two after the stake had been set he obligingly aided lessees to set up the boiler for the derrick, hauled coal thereto and later declared, while the drilling was in process, that if it was not continued to completion, he himself would complete the well, and, as the testimony discloses, his satisfaction was notably enhanced by the fact that since the well was to be so near his home, there would be less cost in piping the 200,000 cubic feet of gas

which, by the terms of the lease, lessors were to have free of cost, and which supply of free gas lessors were using up to the time of the starting of the present litigation. As for Mrs. Myers, it does not appear from the record that she at any time made objection to the selection of the location of the well or to its being drilled at that point. Certainly, under these facts and circumstances, appellees had every reason to rely upon the good faith of lessors in making their parol agreement and upon the undoubted consent of both husband and wife to all proceedings incident to the drilling of the well. They had full knowledge of the entire matter, they saw the drilling day by day, and it was not until the work was far advanced that objections were voiced. Forfeiture is not a favorite of the law, and to permit a declaration thereof for breach of covenant, the right thereto must be distinctly reserved, the proof of the happening of the event upon which it is to be exercised must be clear, the right must be exercised promptly, and in equity the forfeiture must not be unconscionable: Barringer & Adams's Law on Mines and Mining, 148. In the case before us, we find no proof of an event upon which to base a forfeiture; plaintiffs stood by and delayed exercise of any alleged right until the well was far advanced towards completion, up to which time lessees had expended about $3,500 in carrying on the work.

As we have already stated, the chancellor found no grounds existed upon which to base a forfeiture, and, under his findings of facts, which were warranted by the testimony, and conclusions of law based thereon, plaintiffs' bill was properly dismissed.

Decree affirmed at appellants' costs.