## Paul v. Snyder

*Myron M. Moskowitz,* for plaintiffs.
*William Harvey Wiest,* for defendants.

MOSER, J., July 15, 1974.—In this action in equity, plaintiffs request specific performance of an option to purchase contained in a written lease of farm property located partly in both Northumberland County and Schuylkill County.

### STATEMENT OF ISSUES AND PLEADINGS

The issue arising from the pleadings and evidence is whether plaintiffs are entitled to specific performance of an option to purchase farm property contained in a lease. Plaintiffs filed their complaint in equity in this court on May 20, 1974, to enjoin defendants Snyder from transferring or encumbering the real property to persons other than plaintiffs, and to obtain specific performance of the option to purchase. At the conclusion of the hearing before this

court on June 3, 1974, an injunction to restrain the transfer or encumbrance of the property until final disposition of the proceeding was issued by the court. At the same time, the attorneys for the parties stipulated on the record that the hearing held June 3, 1974, would constitute both the preliminary and the final hearing in the case. On June 10, 1974, defendants filed a responsive answer to the complaint, together with a counterclaim for possession of the real property.

## FINDINGS OF FACT

1. Plaintiffs, Lyle Paul and Jennie Paul, are husband and wife, and plaintiff, Marlin Lesher, is single, all adult individuals, residing at Leck Kill, Upper Mahanoy Township, Northumberland County, Pa.

2. Defendants, Emerald C. Snyder and Regina Snyder, are husband and wife, all adult individuals, residing at Pitman, Upper Mahanoy Township, Northumberland County, Pa.

3. Defendants, David J. Long and Brenda L. Long, are husband and wife, all adult individuals, residing at R.D. No. 1, Pitman, Upper Mahanoy Township, Northumberland County, Pa.

4. By written agreement dated April 1, 1971, defendants Snyder, as landlords and parties of the first part, leased to plaintiffs, as tenants and parties of the second part, for a term of five years, reserving rent of $3,000 per year, payable $250 monthly, the farm property bounded and described as follows:

"ALL those two certain messuages or tracts of land situate in Upper Mahanoy Township, Northumberland County and part of tract no. 1 in Schuylkill County, bound and described as follows to wit:

"TRACT NO. 1: BEGINNING at a white oak by land formerly of John Maurer, now lands of the

Grantor, G. M. Howerter, south twenty (20) degrees east twenty five (25) perches to a post; thence by land formerly of Charles Reiner, now Harry Reiner, south one (1) degree west twenty two (22) perches to a stone; thence by the same, south seventy eight (78) degrees west thirty (30) perches to a post; thence by the same, north eighty seven and one half (87 1/2) degrees west twelve (12) and eight tenths (0.8) perches to a post; thence by land formerly of Jesiah Geist, now Lee Reiner, north twenty four (24) degrees west fifty six and three tenths (56.3) perches to a stone; thence north forty two and one half (42 1/2) degrees east three and three tenths (3.3) perches to a stone; thence by land formerly of Charles Reiner, now Lee Reiner, north three fourths (3/4) degrees east fifty five and six tenths (55.6) perches to a stone; thence by land formerly of Simon Snyder, now Charles D. Snyder, north eighty six and one half (86 1/2) degrees east fifty four perches to stone; thence by land formerly of John Maurer, now Wilbert Snyder and other timberland of the Grantor, south one (1) degree east sixty one and one half (61 1/2) perches to place of BEGINNING, containing thirty seven (37) acres and thirty (30) perches strict measure. The said tract was surveyed by D. G. Renn on April 10, 1877.

"TRACT NO. 2: BEGINNING at a stone at the corner of lands formerly of Samuel Kieffer, now Henry Long; thence along lands of the said Henry Long and lands formerly of Isaac Schreffler, now Marlin Schreffler, north seventy-eight (78) degrees west one hundred ninety two (192) perches to a stone; thence along lands formerly of Benjamin Wetzel, north eighty eight (88) degrees east six and five tenths (6.5) perches to a point; thence south eighty five (85) degrees east one hundred ninety one and five tenths (191.5) perches to a stone; thence by land formerly of Elias Howerter, now Wil-

liam Kahler, south ten (10) degrees west twenty eight and eight tenths (28.8) perches to a stone; thence along lands formerly of Joel Kerstetter, now Charles D. Snyder, south three and one half (3 1/2) degrees west four and four tenths (4.4) perches to the place of Beginning, containing twenty five (25) acres and ninety eight (98) perches of land. The said tract was surveyed by E. J. Geist on September 6, 1905.

"TRACT NO. 3: ALL that certain messuage, tenement and tract of land, situate, lying and being in Upper Mahanoy Township, Northumberland County, and partly in Upper Mahantongo Township, Schuylkill County, and State of Pennsylvania, bounded and described as follows, to wit:

"BEGINNING at a stone; thence by land formerly of George Geist, now James Oxenrider, north seventy eight (78) degrees east seventy three and eight tenths (73.8) perches to a stone; thence by land formerly of Daniel Reiner, now Henry Reiner, north twenty four and one half (24 1/2) degrees west, sixty four and five tenths (64.5) perches to a stone; thence north eighty seven and three quarters (87 3/4) degrees west, twelve and five tenths (12.5) perches to a stone; thence by lands formerly of Monroe Howerter, now Emerald Snyder, north twenty three and three fourths (23 3/4) degrees west, fifty seven (57) perches to a stone; thence by the same, south eighty eight (88) degrees west, seventy six and eight tenths (76.8) perches to a stone; thence by land formerly of Oscar Ramer, now Jerry Raupt, south twenty four and one half (24 1/2) degrees east, eighty three and four tenths (83.4) perches to a stone on County Line; thence fifty five (55) perches and fourteen feet (14) to the place of Beginning, containing sixty four (64) acres of land, be the same more or less.

"ALSO all that certain messuage, tenement and tract of land, situate in Upper Mahanoy Township, Northumberland County and State aforesaid, bounded and described as follows, to wit:

"BEGINNING at a stone; thence by land formerly of William Paul, now C. D. Snyder, north fifty nine and seven tenth (59.7) perches to a stone; thence by land formerly of George Paul, now William and Lyle Paul, north eighty nine and one half (89 1/2) degrees east, fifty four and six tenths (54.6) perches to a stone; thence by land formerly of Monroe Howerter, now Emerald Snyder, south three fourth (3/4) degrees west, fifty five and six tenth (55.6) perches to a stone; thence south forty two and one half (42 1/2) degrees west, three and three tenth (3.3) perches to a stone; thence by land now or formerly of the late Jesse Geist, south eighty eight and one fourth (88 1/4) degrees west, fifty one and two tenths (51.2) perches to the place of BEGINNING, containing nineteen (19) acres and one hundred twenty six (126) perches, strict measure.

"Leasing all the tillable land and reserving the timberlands, one acre of land upon which the trailer of Emerald C. Snyder, Jr. is located, one acre adjoining the Emerald C. Snyder Jr. tract for the personal use of the parties of the first part, and the land which is presently occupied by the parties of the second part."

5. Paragraph numbered 3 of the lease provides: "3. The parties of the second part shall have the option to purchase the said premises at the consideration of $50,000.00 at any time during the term of this lease."

6. Paragraph numbered 4, section (b), of the lease provides: "4. Farm Operation . . . (b) The Tenants will operate the farm in an efficient and husbandlike manner, and will perform seeding, cultivating, harvesting

and plowing, and all other usual and customary or necessary farm tasks at the proper and best approved time, and in the proper and best approved manner."

7. Paragraph numbered 5 of the lease provides, inter alia: "5. Improvements and Repairs. (a) The Tenants shall make no alterations, . . . changes or permanent improvements to the land or buildings, . . . without the consent of the Landlord in writing . . . (b) Maintenance of the Farm—Tenant agrees to maintain the farm and farm buildings in good condition and repair and to yield possession thereof at the end of the term of this lease . . . in as good order as at the beginning, ordinary wear and damage caused by conditions beyond their control excepted."

8. Paragraph numbered 7, section (c), of the lease provides: "7. The Tenant Agrees That: . . . (c) He will not commit waste on or damage to the farm or permit others to do so."

9. Paragraph numbered 10, section (d), of the lease provides "10. Remedies of the Landlord . . . (d) The Lessee does hereby, upon breach of any of the conditions or covenants of this lease during the original term . . . agrees that an amicable action of ejectment may be entered . . ."

10. On February 9, 1974, defendants Snyder sent a letter seeking to void the lease because of seven listed instances of alleged violations of the lease, four of which are still being relied on by defendants Snyder: (1) breaking and not repairing big barn doors; (2) breaking and not replacing cement pier in foundation of barn; (3) breaking and not repairing weather boards on chicken house; (4) breaking and not repairing overhead door panel.

11. On behalf of plaintiffs, their attorney wrote letters to defendants: (1) on February 23, 1974, denying any breach of the lease; (2) on March 23, 1974, exer-

cising the option to purchase; and, (3) on April 3, 1974, requesting delivery of a deed for the property.

12. On behalf of defendants Snyder, their attorney wrote a letter to plaintiffs on April 3, 1974, advising that the lease was "hereby declared null and void" for breach of paragraphs 5(a), 5(b), and 7·of the lease, and stating that defendants intended to institute an amicable action of ejectment under section 10 of the lease.

13. At the hearing held June 3, 1974, the testimony offered on behalf of plaintiffs, without contradiction, indicated that plaintiffs are ready, able and willing to purchase the real estate described in finding of fact no. 4, in accordance with the option mentioned in paragraph 3 of the lease.

14. At the hearing held June 3, 1974, the testimony offered on behalf of defendants to the effect that alterations to the barn were made without written consent of defendants Snyder, that some damage to buildings was not repaired and that plaintiffs did not operate the farm in a husbandlike manner as to seeding and fertilizing was contradicted by plaintiffs' evidence and is of questionable weight.

15. The rent due under the lease has been paid in full to the first day of the month following the exercise of the option by plaintiffs' letter dated March 23, 1974.

## DISCUSSION

The real question before the trial judge is whether or not the option could be exercised by plaintiffs on March 23, 1974, after they had received the letter dated February 9, 1974, from defendants Snyder seeking to void the lease. If the option were still alive and valid, plaintiffs are entitled to specific performance of it for the purchase of the farm property. This letter of termination, implemented by the letter of defendants' attor-

ney dated April 3, 1974, and the testimony of defendant, Emerald Snyder, at the hearing, alleges default by plaintiffs in altering the premises without written consent of defendants Snyder, damaging and failing to repair the buildings and improperly seeding and fertilizing the fields. While tacitly admitting these conditions do exist, the testimony for plaintiffs at trial indicates that defendants knew of the alterations; that most of the damage resulted from ordinary wear, with necessary repairs being made; and that plaintiffs did follow the usual good farming practices of the area as to fertilizing and planting.

If we were to assume that the tenant committed waste or did not exercise good husbandry in seeding or fertilizing the fields, the landlord has a remedy in a civil cause of action and cannot claim confiscation of the tenant's rights: Clark v. Harvey, 54 Pa. 142; Commonwealth v. Peterman, 130 Pa. Superior Ct. 497, 198 Atl. 687. The same rule applies to a breach by tenant of a covenant to repair and deliver up the premises in good order and repair: Normile v. Martell, 95 Pa. Superior Ct. 139.

In the present case, it is obvious that the landlords did not pursue their remedy of civil suit, but sought to void the lease for alleged violations of the repairing, good husbandry and waste provisions of the lease. Parties may agree that on failure of the lessee to pay rent or to keep other covenants the lease may become void, yet such intent in the agreement must be so plain as to be unavoidable in order to sustain such a condition: English v. Yates, 205 Pa. 106. Examination of the lease does not reveal any specific authority for forfeiture for violation of the repair, good husbandry or waste provisions of the lease.

The argument being advanced by defendants is not that the lease contains any specific provision author-

izing defendants to forfeit the lease because plaintiffs breached the repair, good husbandry or waste provisions of the lease; rather, defendants contend that the breach of these provisions was so material as to go to the whole consideration of the contract, giving defendants the right to rescind the agreement. Although a breach of contract may have that legal effect in some situations, we do not agree that this rule of law has any application in the case before us, nor has counsel cited any Pennsylvania law to that effect.

Forfeiture is not a favorite of the law and to permit a declaration thereof for breach of covenant, the right must be distinctly reserved, the proof of the happening of the event before which it is exercised must be clear, the right must be exercised promptly, and in equity the forfeiture must not be unconscionable: Myers v. Ohio-Penn Gas & Oil Co., 294 Pa. 212. From a consideration of the evidence in this case, we cannot find any breach of the repair, good husbandry or waste provisions of that lease by plaintiffs that would be so material as to entitle defendants to forfeit the lease. In addition, defendants continued to recognize the continuance of the landlord-tenant relationship between plaintiffs and defendants, even after learning of the alleged breach of these provisions of the lease by plaintiffs, thereby waiving any forfeiture option defendants may have had for those lease violations: English v. Yates, supra.

Plaintiffs insist that even though defendants had properly terminated the lease, it would not necessarily terminate the option. An option to purchase is not an essential covenant of a lease, nor is it a term and condition of the demise. It is an independent covenant having a relationship to the lease only insofar as it describes the persons and property: Meyers v. Epstein, 31 Lehigh 311; Pettit v. Tourison, 283 Pa. 529.

It has been held in Pennsylvania that options similar to the one in suit are viewed as independent contracts or agreements separate from the lease in which they are contained. Where the option in the lease is duly exercised, the landlord-tenant relationship ceases and the parties are in a vendor-vendee relationship. The agreement of sale relates back to the date of the option and an equitable interest in real estate has become vested: Feinstein v. Siskin, 69 D. & C. 90.

## CONCLUSIONS OF LAW

1. Plaintiffs have properly exercised the option provisions in the lease to purchase the real estate described in finding of fact no. 4.

2. The attempt by defendants Snyder to forfeit the lease because of plaintiffs' alleged breach of the repair, good husbandry and waste provisions of the lease, was illegal and without authority in law.

3. Defendants Snyder had no legal right to terminate plaintiffs' option to purchase the real estate described in finding of fact no. 4.

4. Defendants Snyder had no legal right to refuse to sell the real estate described in finding of fact no. 4 to plaintiffs in accordance with the option to purchase the same as contained in the lease.

5. Plaintiffs are ready, willing and able to purchase the real estate described in finding of fact no. 4 according to the option to purchase the same as contained in the lease.

## DECREE NISI

And now, July 15, 1974, upon consideration of the foregoing, it is ordered, adjudged and decreed as follows:

1. That plaintiffs' prayer for specific performance of the option in the lease dated April 1, 1971, to purchase

the real property described in finding of fact no. 4 from defendants Snyder, is hereby granted.

2. That defendants Snyder shall, within 20 days of the date of this decree, by good and sufficient deed, convey and assure the real property as described in finding of fact no. 4, and every part thereof, with marketable title and free of all encumbrances, to plaintiffs, in fee simple, and legally sign, seal, acknowledge and deliver said deed to plaintiffs in proper legal form, upon payment of the price stated in the option.

3. That defendants shall pay the costs of this proceeding.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or their counsel of record. If no exceptions are filed within 20 days, this decree nisi shall be entered by the prothonotary, on praecipe, as the final decree.